ANN CRAWFORD McCLURE, Chief Justice *294 Texas cities enjoy governmental immunity and cannot be sued absent some recognized waiver of that immunity.[1] What recourse, then, does a property owner have when a city applies, or misapplies, its municipal land use regulations so as to deny a fair use of their property? At the extreme, if the City substantially deprives a landowner of all economically viable uses of the property, the City is subject to a constitutional takings claim which overcomes governmental immunity.[2] If the land use regulation is illegal or unconstitutional, a property owner may seek a declaration to that affect, which also overcomes immunity.[3] In this case, the owners of a parcel of land in Austin pursued two other options.[4] They filed a declaratory judgment action against the city to construe several of its ordinances. Additionally, they sued various city officials claiming they acted ultra vires by misapplying city ordinances. The trial court dismissed both these claims on a plea to the jurisdiction, and further denied the land owners leave to amend their petition.
We agree with the trial court that governmental immunity precludes a declaratory judgment claim against the City of Austin to construe its ordinances. The holding is somewhat academic in this case, however, because we must construe the same ordinances to determine if the land owners have validly asserted an ultra vires claim against several City officials. In doing so, we conclude that the trial court correctly construed the ordinances (and thus correctly dismissed the ultra vires claims). Finally, we conclude the trial court did not err in denying leave to amend, and affirm the judgment below.
BACKGROUND
This case arises from a dispute between the Ali and Donna Tabrizi (the Tabrizis) and the City of Austin (the City) over the Tabrizis' desire to build a house on an undeveloped piece of land. The Tabrizis allege in their last live pleading that they purchased the lot in 2013, which was a .56 acre "remainder" lot from four subdivisions developed around it. Their lot is not itself in a subdivision, nor has it been platted. It has, however, been on the tax *295 roles for more than forty years and is zoned for residential use.
When the Tabrizis investigated obtaining a building permit, they were told by the City that they would need to first obtain a plat, which required them to file a subdivision application. Title 25 of the City's municipal code governs development. Subdivision and platting regulations are found in Chapter 25-4 of that title. See Austin, Tex. Austin City Code, ch. 25-4 et. seq. (2018) (hereinafter, City Code). But as a part of that application process, the City required the Tabrizis to comply with its environmental restrictions, as found in Chapter 25-8. That chapter includes a section addressing "critical environmental features." Id. at 25-8, § 25-8-281. As it turns out, there is a "seep" on the back end of the Tabrizis' lot which is one type of critical environmental feature referenced in the code.[5] Eventually, the Tabrizis' proposed a subdivision that divided their property into two lots-one that would remain undeveloped and buffer the seep-and the other to be used for their residence. Nonetheless, the City rejected their application and a further request to obtain a variance from the environmental rules.
The Tabrizis then sought to circumvent the subdivision platting altogether. Under Chapter 25-4, a property is exempt from platting if it (1) is five acres or less, (2) existed in its current configuration on January 1, 1995, (3) was receiving utility services on January 1, 1995, as authorized under the rules of a utility provider, (4) is located on an existing street, and (5) complies with the requirements for roadway frontage. Id . at ch. 25-4, § 25-4-2(D). The only predicate at issue in this case was whether the lot had received utility service on January 1, 1995. The lot abuts a street with curbs and gutters. The Tabrizis contended that the curb and gutter drainage facilities qualified the lot as receiving utility service. The City disagreed and declined to grant an exemption.
The Tabrizis then filed this lawsuit against the City and three of its employees in their official capacity. The Tabrizis' last amended petition seeks a declaration that (1) the requirements of Chapter 25-8 (the environmental rules) do not apply to their subdivision application and that the actions of the several officials were ultra vires by applying 25-8 to their application, and (2) they meet the exception from platting as found in Section 25-4-2 because the lot was "receiving utility service" on January 1, 1995.
The City and its officials filed a plea to the jurisdiction supported in part with the affidavit of Charles Lesniak, the chief environmental officer for the City. The Tabrizis objected to portions of his affidavit. Eventually his entire deposition was attached to the plea to the jurisdiction record. The trial court sustained the objections to Lesniak's affidavit, but viewed the matter as a legal dispute that could be decided from the petition and the City ordinances. Based on its review, the trial court concluded that it had no jurisdiction to consider a declaratory suit against the City to construe its ordinances. The court also concluded the ultra vires claims failed because the City officials were acting pursuant to their authority under the development ordinance. The Tabrizis sought leave to amend their petition, which the trial court denied. This appeal follows.
STANDARD OF REVIEW GOVERNING LAW
When it applies, governmental immunity protects political subdivisions of *296 the State, including cities, from suit. See Wichita Falls State Hospital v. Taylor , 106 S.W.3d 692, 694 n.3 (Tex. 2003). A governmental unit's immunity implicates a trial court's subject matter jurisdiction. Engelman Irrigation Dist. v. Shields Brothers, Inc. , 514 S.W.3d 746, 751 (Tex. 2017). Governmental immunity generally applies to municipalities when they are performing governmental as opposed to proprietary functions. Wasson Interests, Ltd. v. City of Jacksonville , 489 S.W.3d 427, 439 (Tex. 2016) ; City of Austin v. Utility Associates, Inc. , 517 S.W.3d 300, 307-08 (Tex.App.-Austin 2017, pet. denied). Platting determinations are a governmental function. City of Round Rock v. Smith , 687 S.W.2d 300, 302 (Tex. 1985).
As here, a governmental unit may raise its immunity through a plea to the jurisdiction. Texas Dept. of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 225-26 (Tex. 2004) ; County of El Paso v. Navar , 511 S.W.3d 624, 629 (Tex.App.-El Paso 2015, no pet.). The function of the plea is "to defeat a cause of action without regard to whether the claims asserted have merit." Bland Independent School Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). As the plaintiffs, the Tabrizis carry the burden to demonstrate that the trial court has subject-matter jurisdiction over their claims. Dallas Area Rapid Transit v. Whitley , 104 S.W.3d 540, 542 (Tex. 2003) ; City of El Paso v. Waterblasting Technologies, Inc. , 491 S.W.3d 890, 895 (Tex.App.-El Paso 2016, no pet.). To determine if they have met that burden, we consider the facts alleged in the petition and, "to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." Whitley , 104 S.W.3d at 542 ; see also Miranda , 133 S.W.3d at 227 ; Bland Independent School Dist. , 34 S.W.3d at 555. "We construe the pleadings liberally, taking them as true, and look to the pleader's intent." Creedmoor-Maha Water Supply Corp. v. Texas Commn. on Envtl. Quality , 307 S.W.3d 505, 513 (Tex.App.-Austin 2010, no pet.), citing Miranda, 133 S.W.3d at 226-27. If the record includes jurisdictional evidence controverting the pleaded allegations, we take as true all evidence favorable to the non-movant and indulge every reasonable inference and doubt in the nonmovant's favor. Miranda , 133 S.W.3d at 228 ; Creedmoor-Maha , 307 S.W.3d at 513.
We review de novo the question of whether a plaintiff has alleged facts sufficient to affirmatively demonstrate a trial court's subject matter jurisdiction, and whether the jurisdictional facts establish a trial court's jurisdiction (or lack thereof). State Dept. of Highways and Public Transp. v. Gonzalez , 82 S.W.3d 322, 327 (Tex. 2002) ; Bland Independent School Dist. , 34 S.W.3d at 554 ; see also Tex. Natural Res. Conservation Comm'n v. IT-Davy , 74 S.W.3d 849, 855 (Tex. 2002).
DISCUSSION
The Tabrizis raise five issues for our review that contend the trial court erred: in dismissing the claim against the City (Issue One); dismissing the ultra vires claims against the City officials (Issues Two and Three); and in denying them leave to amend their petition (Issues Four and Five). We take each in turn.
The Declaratory Judgment Act does not waive Governmental Immunity to Construe an Ordinance
In their first issue, the Tabrizis contend that the trial court erred in dismissing the claim against the City because a court has jurisdiction to construe a statute against a governmental entity so long as no monetary relief is sought. The Tabrizis' suit seeks a declaration under the Texas Declaratory Judgment Act (the *297 DJA). That act expressly allows for a "person ... whose rights, status, or other legal relations are affected by a ... municipal ordinance ... [to] have determined any question of construction or validity arising under the ... ordinance ... and obtain a declaration of rights, status, or other legal relations thereunder." TEX.CIV.PRAC.&REM.CODE ANN. § 37.004(a) (West 2015). The DJA, however, does not grant a trial court's subject matter jurisdiction-it is "merely a procedural device for deciding cases already within a court's jurisdiction." Texas Ass'n of Bus. v. Texas Air Control Bd. , 852 S.W.2d 440, 444 (Tex. 1993) ; see Texas Dep't of Transp. v. Sefzik , 355 S.W.3d 618, 621-22 (Tex. 2011) (per curiam)(noting that Texas Supreme Court has consistently stated that the DJA "does not enlarge the trial court's jurisdiction but is 'merely a procedural device for deciding cases already within a court's jurisdiction' "). Accordingly, the DJA "is not a general waiver of sovereign immunity" but only waives "immunity for certain claims." Texas Parks & Wildlife Dep't v. Sawyer Trust , 354 S.W.3d 384, 388 (Tex. 2011) ; McLane Company, Inc. v. Texas Alcoholic Beverage Comm'n , 514 S.W.3d 871, 876-77 (Tex.App.-Austin 2017, pet. denied).
The extent of "those certain claims" is at the heart of the Tabrizis' first issue. The Tabrizis contend that the Texas Supreme Court's decision in Texas Lottery Com'n v. First State Bank of DeQueen , 325 S.W.3d 628, 634-35 (Tex. 2010) allows a court under the DJA to "construe" a statute, or as here, an ordinance. Conversely, the City contends that one year later the Texas Supreme Court in Texas Dep't of Transp. v. Sefzik made clear that the DJA could only be used to challenge the validity of a statute. The City points out the Tabrizis' petition asks the courts to construe several ordinances, and not invalidate them. The Dallas Court of Appeals mentioned a possible conflict between DeQueen and Sefzik in City of McKinney v. Hank's Restaurant Group, L.P. , 412 S.W.3d 102, 111-12 (Tex.App.-Dallas 2013, no pet.) ("The law has been evolving on the question of whether the Act waives governmental immunity against a claim seeking only the interpretation of a statute or a declaration of a party's statutory rights."). The Dallas court concluded, however, that Sefzik controlled, and the DJA "does not waive immunity against claims seeking a declaration of the claimant's statutory rights or an interpretation of an ordinance." Id. at 112. The court principally rested this conclusion on Sefzik and another of the high court's recent decisions, City of El Paso v. Heinrich , 284 S.W.3d 366, 373 n.6 (Tex. 2009). Nonetheless, the Tabrizis cite several cases for the proposition that immunity is waived for interpretation of statute.[6] Both parties also direct us to other cases limiting the DJA to suits seeking to invalidate statutes.[7]
*298 The court in DeQueen had to decide which of two conflicting statutes controlled the assignability of lottery winnings. 325 S.W.3d at 631-32. The court was required to effectively invalidate one of the conflicting ordinances. Id. at 634 ("FSB asserts that immunity does not apply because ... it is not challenging an individual's actions under a statute, but is challenging the validity of the statute itself. We agree."). But to the extent there is a conflict in the high court's jurisprudence, Sefzik is the latest pronouncement and we feel compelled to follow it. Any further clarification needs to come from the Texas Supreme Court. In this case, however, we view the conflict as somewhat academic because we are required to construe the very same ordinances to resolve the Tabrizis' ultra vires claims against the City officials.
Governmental immunity does not apply when a government official acts outside his or her authority. See Houston Belt & Terminal Ry. Co. v. City of Houston , 487 S.W.3d 154, 157 (Tex. 2016) ; Sawyer Trust , 354 S.W.3d at 393. This exception, referred to as an ultra vires claim, applies when a state actor either fails to perform a ministerial task, or acts without legal authority. Southwestern Bell Telephone, L.P. v. Emmett , 459 S.W.3d 578, 587 (Tex. 2015) ; Heinrich , 284 S.W.3d at 372. Proper suits alleging ultra vires do not implicate governmental immunity because they "do not seek to alter government policy but rather to enforce existing policy." Bacon v. Texas Historical Commission , 411 S.W.3d 161, 173 (Tex.App.-Austin 2013, no pet.).
To determine whether a party has asserted a valid ultra vires claim, we must construe the relevant statutory provisions, apply them to the facts as alleged in the pleadings, and determine whether those facts constitute acts beyond the official's authority or establish a failure to perform a purely ministerial act. See Texas Dep't of Transp. v. Sunset Transp., Inc. , 357 S.W.3d 691, 701-02 (Tex.App.-Austin 2011, no pet.) ; City of Cedar Park , 2017 WL 2224527, at *3. As the Texas Supreme Court said in Emmett :
Although ordinarily we would first consider whether the Commissioners have governmental immunity from suit, which would implicate the trial court's subject matter jurisdiction, we begin by considering the proper construction of Texas Water Code § 49.223. That is because whether the Commissioners' conduct constitutes ultra vires actions that falls within an exception to governmental immunity depends on what the statute required of the District.
459 S.W.3d at 583. Thus, while we overrule Issue One, we necessarily turn to the question of the power and duties granted to the City's employees under Title 25-the City's development code-to decide if the Tabrizis have asserted a valid ultra vires claim.
*299 The Officials Did Not Act Ultra Vires in Applying the Environmental Chapter
The Tabrizis second issue contends the trial court erred in concluding that the environmental regulations in Chapter 25-8 applied to a Chapter 25-4 application to obtain a subdivision plat. Specifically, the Tabrizis claim the trial court erred in overlooking deposition testimony from the City's chief environmental officer. They claim that testimony shows he was unable to cite any direct authority for applying the environmental rules to platting applications. The Tabrizis claim that they only seek to plat the property, which they contend requires nothing more than a proper survey.
We apply rules of statutory construction to construe municipal ordinances. Houston Belt , 487 S.W.3d at 164, citing Board of Adjustment v. Wende , 92 S.W.3d 424, 430 (Tex. 2002). Statutory construction is a legal question that we review de novo. In re ReadyOne Industries, Inc. , 394 S.W.3d 680, 684 (Tex.App.-El Paso 2012, orig. proceeding), citing Entergy Gulf States, Inc. v. Summers , 282 S.W.3d 433, 437 (Tex. 2009). Our primary focus in statutory interpretation is to give effect to legislative intent, considering the language of the enactment, as well as its history, the objective sought, and the consequences that would flow from alternative constructions. Crown Life Ins. Co. v. Casteel , 22 S.W.3d 378, 383 (Tex. 2000). We seek that intent "first and foremost" in the statutory text. Lexington Ins. Co. v. Strayhorn , 209 S.W.3d 83, 85 (Tex. 2006). We begin with the plain and ordinary meaning of the ordinance's words, using any definitions provided by the enacting body. See Texas Mut. Ins. Co. v. Ruttiger , 381 S.W.3d 430, 452 (Tex. 2012). We also presume that every word in a statute has been used for a purpose and that every word excluded was excluded for a purpose. Emeritus Corporation v. Blanco , 355 S.W.3d 270, 276 (Tex.App.-El Paso 2011, pet. denied) ; see also In re M.N. , 262 S.W.3d 799, 802 (Tex. 2008) ; Cornyn v. Universe Life Ins. Co. , 988 S.W.2d 376, 379 (Tex.App.-Austin 1999, pet. denied).
As noted, provisions related to land development are found in Title 25 of the City Code. Section 25-1-61 requires that a person developing land "must obtain approvals in the following order: (1) zoning; (2) subdivision; (3) site plan; and (4) building permit." City Code, ch. 25-1, § 25-1-61.[8] The Tabrizis' petition alleges that they intend to build a residence on the property, which qualifies as development under Title 25. See id. at § 25-1-21 (28)("Development" defined as "the construction ... of a building ...; the placement of a structure on land;"). The land was appropriately zoned, thus the next step they faced was obtaining a subdivision approval. The Tabrizis argue, however, that the environmental rules in Chapter 25-8 do not apply at the subdivision stage, particularly when they only seek to plat the land. We disagree.
*300 Section 25-4-84 addresses who may approve a plat and the criteria to be used. The decision rests, depending on the circumstances, with either the Director, the Land Use Commission, or City Council. Id. at § 25-4-84(1),(2),(3). Either of those decision makers "shall approve a plat that complies with the Comprehensive Plan and the requirements of this title. " Id. at § 25-4-84 (B) [Emphasis added]. Title 25 covers development, and one chapter in the that title, 25-8, includes the environmental rules. Similarly, Section 25-4-1 (A), titled "compliance," requires that a subdivision in the zoning jurisdiction "must comply with all requirement of this title. " [Emphasis added]. Id. Again, the environmental rules are found in Title 25. The connection between the subdivision and environmental rules makes sense in this case. To account for the seep on their property, the Tabrizis eventually proposed subdividing their land into two lots, with one containing the seep and a buffer to protect it. That division would fit hand-in-glove with Section 25-8-281 that generally precludes residential development near critical environmental features. Id. at § 25-8-281 ("A residential lot may not include a critical environmental feature or be located within 50 feet of a critical environmental feature."). The section also includes detailed provisions for buffer zones required around critical environmental features. The specific details of their subdivision plan, and the reason it was rejected are not before us, nor essential to this appeal. It is enough to note that the environmental rules might be circumvented if they do not apply at the subdivision-platting stage.[9]
The City also calls our attention to Section 25-8-21 within the environmental chapter, titled "Applicability." It states that except "as provided in Subsection (B), this subchapter applies in the planning jurisdiction." Id. The lot at issue is within the planning jurisdiction. More instructive language is found in the exception subsection, that covers the City's extraterritorial jurisdiction in Travis County. The exception sets out its application to "a preliminary plan, final plat, or subdivision construction plan." Id. at § 25-8-21(B). The import of the exception language is the clear inference that environmental regulations apply to all those steps in the development process.
There is an additional indication these chapters were all meant to be considered together. Section 25-1-251 sets out a procedure for "Applications for Adjustment" for water quality rules under Chapter 25-8. The ordinance provides that Applications "may be considered only in connection with the review of: (1) a site plan; (2) a subdivision; or (3) other specific development project or proposal." Id. at 25-1, § 25-1-251(A). The Application for Adjustment procedure therefore contemplates that in the consideration of a subdivision, Chapter 25-8 environmental issues could be addressed.
The Tabrizis point out, however, that the City's chief environmental officer *301 was unable during his oral deposition to point out any authority for tying the environmental rules to the plat requirements. He also walked back some of the claims that he made in an affidavit about the requirements under the development code. "Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993). We are less sure, however, that an agency employee's inability to articulate the construction of a statute in a deposition, or in an affidavit, should overcome our construction of clear statutory language.[10] We therefore decline to alter our construction based on the agency employee's testimony.
The Tabrizis also argue that the applicable watershed protection rules in Section 25-8 only apply to "development" and their application to subdivision decision by itself, does not involve "development." The argument overlooks that the subdivision plan is a defined predicate step towards the eventual construction of a home. In a sterile vacuum, a site plan, or even an application for a building permit, are not technically "development" under the ordinance's definition because by themselves, they are not the "construction" of a building. They are, however, critical to the process. We do not apply a construction that leads to absurd results, and therefore decline the Tabrizis' hyper-technical cabining the term "development" in Section 25-8-421.
Finally, we find no support in the textual language of the ordinance for the Tabrizis' view that they only need a proper survey to plat the property. "Plat approval, like zoning, is an exercise of the [governing entities'] police power. The police power is a grant of authority from the people to their governmental agents 'to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals, or the public safety.' " City of Round Rock v. Smith , 687 S.W.2d 300, 302 (Tex. 1985), quoting Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475, 479 (1934). Furthermore, "[i]n deciding whether to approve or disapprove a proposed plat the planning commission must interpret and construe the city plan, applicable ordinances and state statutes to determine whether the proposed plat complies with these laws." Id. at 303 ; see also Howeth Investments, Inc. v. City of Hedwig Village , 259 S.W.3d 877, 895 (Tex.App.-Houston [1st Dist.] 2008, pet. denied) (noting policy implications of platting decisions). Under the terms of the City's code, we agree that more than a survey is required for platting. We therefore overrule Issue Two as it claims the City officials lacked the authority (and thus acted ultra vires ) in applying Chapter 25-8 to a subdivision application.
The Officials Did Not Act Ultra Vires in Denying the Exemption
In Issue Three, the Tabrizis claim that City officials acted ultra vires in denying them an exemption from the subdivision platting requirement under a grandfathering exception. The only relevant question under that exception was whether the lot was receiving "utility service that was authorized under the rules of the utility provider" on January 1, 1995. City Code ch. 25-4, § 25-4-2(B). The term "utility service" is not defined in the ordinance. The Tabrizis pleaded that the street gutter abutting the lot qualifies as "utility service."
*302 The City attached to its plea to the jurisdiction an informational document for those pursuing the exception. That document states, "Utility service means that the property has an electric, water, wastewater, or gas meter. Water and wastewater tap permits without a meter or utility accounts are not acceptable." The trial court concluded that while the City's "definition may be imprecise or too narrow, ... there is no ordinary meaning of 'utility' that includes a gutter."
We find no ready definition of the term "utility service." The word utility or utility provider is defined by statute in some technical applications, such as for the Public Utilities Commission. See e.g. Pub. Util. Commn. of Texas v. City of Austin , 728 S.W.2d 907, 917 (Tex.App.-Austin 1987, writ ref'd n.r.e). In more common parlance, the term "utility" means "a service provided by a public utility" and "a unit composed of one or more pieces of equipment [usually] connected to or part of a structure and designed to provide a service (as heat, light, power, water, or sewage disposal)." Webster's Third New Int'l Dictionary, 2525 (unabridged ed. 1993); see also Black's Law Dictionary, 1780 (10th ed.)(defining "utility" in part as "[a] business enterprise that performs an essential public service and that is subject to governmental regulation" and defining "public utility" as "[a] company that provides necessary services to the public, such as telephone lines and service, electricity, and water"). Under the common dictionary definition, a street gutter that redirects water would not intuitively qualify as a utility service provided to the property.
The City does charge property owners a "drainage utility fee" to pay for the City's operation and maintenance of its drainage infrastructure. That infrastructure includes street gutters, and the discharge culverts they feed. The fee, however, was never assessed to this property. The Tabrizis argue, however, that the City cannot consider drainage a "utility" for charging a fee, but consider it something else for the purposes of the grandfathering exception. The City responds in part that the drainage utility fee is charged to property that discharges storm water into the City's drainage system. From the limited record here, the property appears to slope away from the roadway, and it is unclear if storm water flows from the property to the street of vice versa. But equally important, the exemption statute already contains a condition that the grandfathered property must be located on an existing street. City Code, ch. 25-4, § 25-4-2(D)(4). If a drainage utility fee based on curbs and gutters qualified as a utility, it would be redundant to specify it again as a part of the "utility service" requirement.
An ultra vires claim here requires that a City official (1) acted without legal authority in denying the exemption, or (2) had a ministerial duty to grant the exemption. See Emmett , 459 S.W.3d at 587 ; Heinrich , 284 S.W.3d at 372. The Tabrizis do not claim that the City officials violated a ministerial duty. Rather, they argue the definition of a public utility is sufficiently clouded to create a fact issue, thus preventing a summary dismissal of their claim. The question then is whether the City officials acted without legal authority, which turns on whether the officials had the discretion to interpret Section 25-4-2(D) as they apparently did, thereby limiting it to electric, water, wastewater, or gas services hook-ups.
The Texas Supreme Court recently clarified what it means for an official to act "without legal authority" in Houston Belt & Terminal Ry. Co. v. City of Houston , 487 S.W.3d 154, 158 (Tex. 2016). The court there said that "a government officer with some discretion to interpret and apply a *303 law may nonetheless act 'without legal authority,' and thus ultra vires , if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." Id. In that case, an official interpreted two defined terms in a city ordinance contrary to the very definitions contained in the ordinance. The court concluded that the official had discretion to make the interpretation, but no discretion to interpret the term in a way contrary to the definition itself. Id. at 166-67.
Neither party here provides any insights into what discretion the City ordinances give to the officials to interpret or apply the development code. But in that way, this case is analogous to Hall v. McRaven , 508 S.W.3d 232, 242 (Tex. 2017). There, a university president allegedly misinterpreted federal privacy laws in denying a board member access to confidential information. Nothing in the president's grant of authority dictated how he was to interpret federal law, and the federal law was collateral to his primary duties. "When the ultimate and unrestrained objective of an official's duty is to interpret collateral law, a misinterpretation is not overstepping such authority; it is a compliant action even if ultimately erroneous." Id. at 242. Similarly, we are provided nothing showing how the City officials are directed to apply the exceptions, and the determination of what is a utility service, while related to property development, is tangential to the City's enforcement of its code.
And even assuming the officials have some, but not total discretion to define the otherwise undefined "utility service" term, the Tabrizis have not pleaded, nor otherwise shown the officials' interpretation conflicts with ordinary meaning of "utility service" under Section 25-4-2(D). We agree, therefore, that the Tabrizis have not asserted a valid ultra vires claim for the denial of the exemption under Section 25-4-2(D) and we overrule Issue Three.
Motion to Amend
After the trial court issued a letter ruling stating that it would grant the plea to the jurisdiction, the Tabrizis moved for leave to amend their petition. They attached a proposed Third Amended Petition to the Motion for Leave. The trial court denied leave, and the Tabrizis now raise in Issues Four and Five their objection to that ruling. We take up both issues together.
If the pleadings lack sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not reveal incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the trial court should afford the plaintiff an opportunity to amend. Miranda , 133 S.W.3d at 226-27. If, however, the pleadings affirmatively negate jurisdiction, the trial court may grant the plea to the jurisdiction without allowing an amendment. Id. at 227. In determining whether leave to amend should be granted, a court may also consider "[i]f a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity." Harris County v. Sykes , 136 S.W.3d 635, 639 (Tex. 2004). Additionally, the jurisdictional defect must be curable, and the litigant should be able to explain the nature of that cure. Texas A & M University System v. Koseoglu , 233 S.W.3d 835, 840 (Tex. 2007).
The Tabrizis' proposed third amended petition contains three substantive changes. First, the petition adds the factual allegation that the Tabrizis initially submitted a one-lot subdivision application. They were then told that an environmental assessment report was needed. When that *304 environmental assessment was performed, the City required the Tabrizis to resubmit their application as a two-lot subdivision to create the "buffer zone lot" for the seep.
The second change adds an allegation that because of the approval of four subdivisions surrounding their orphaned property, the Tabrizis' lot had already been subdivided. They made this claim by adding the following italicized language to their earlier allegation: "This property is a remainder parcel that was subdivided from its parent property decades earlier. Four subdivisions, all of which were approved by the City of Austin, surround the property in its entirety."
Finally, they sought to add a third alternative claim, seeking:
(a) a declaration that they are not subdividing land within the meaning of Chapter 25-4 of the Austin City Code and (b) that the actions of the Officials were ultra vires to the extent that they required the Tabrizis to submit a subdivision application as a prerequisite for submission of an application for a building permit.
The trial court concluded that none of these changes would support an ultra vires claim. We agree.
By alleging that they were told to resubmit their platting request to subdivide the property, the Tabrizis only confirm that the City believed that the environmental rules pertaining to a seep applied to a platting request. We also conclude that the proper construction of the City Code supports that view. Thus, whether they originally submitted a one-lot or two-lot application is of no moment. No City official acted in an ultra vires fashion by insisting on enforcement of the environmental provisions.
The additional clarification of the petition that alleges the property had been de facto subdivided years earlier also does not change our analysis. As the trial judge alluded to, the Tabrizis point to no code provision that addresses or sanctions de facto subdivisions. Without such authority, an official could hardly have a ministerial duty to recognize such a subdivision, nor be without legal authority to resist it. Moreover, the allegation claims only that the property had been subdivided, not that it had already been platted. As we point out, an express requirement for platting is compliance with the title 25, which includes the environmental chapter. City Code, ch. 25-4, § 25-4-84 (B). Thus, even is the Tabrizis claim is limited to platting, it still must meet chapter 25-8.
The last proposed change adds the allegation that the Tabrizis need not "submit a subdivision application as a prerequisite for submission of an application for a building permit." That claim, however, is starkly at odds with the "Order of Process" provision that provides:
§ 25-1-61-ORDER OF PROCESS.
(A) An applicant must obtain approvals in the following order:
(1) zoning;
(2) subdivision;
(3) site plan; and
(4) building permit.
(B) An applicant may concurrently file applications for the approvals listed in Subsection (A).
Id. at ch. 25-1, § 25-1-61. Other than to claim that the property had already been de facto subdivided, a claim we already reject, we do not understand how the Tabrizis can simply allege that they can skip a step in the process. More importantly, we fail to see how a City official acted in an ultra vires fashion by failing to allow them to do so. We overrule Issues Four and Five.
*305 CONCLUSION
As the Austin Court of Appeals wrote, "merely asserting legal conclusions or labeling a defendant's actions as 'ultra vires,' 'illegal,' or 'unconstitutional' does not suffice to plead an ultra vires claim-what matters is whether the facts alleged constitute actions beyond the governmental actor's statutory authority, properly construed." [Emphasis in original]. Texas Dept. of Transp. v. Sunset Transp., Inc. , 357 S.W.3d 691, 702 (Tex.App.-Austin 2011, no pet.), citing Creedmoor-Maha Water Supply Corp. , 307 S.W.3d at 515-16 & nn. 7-8. We conclude that in applying the pleaded facts to the appropriate construction of the City Code, the Tabrizis have failed to allege a viable ultra vires claim. Three attempts at re-pleading the claim have not changed that fact. While we sympathize with the Tabrizis' situation, we are constrained to enforce the City and its officials' governmental immunity claim. We therefore affirm the judgment below.

E.g. Tooke v. City of Mexia , 197 S.W.3d 325, 332 (Tex. 2006) ; Reata Const. Corp. v. City of Dallas , 197 S.W.3d 371, 374 (Tex. 2006).

See e.g. Mayhew v. Town of Sunnyvale , 964 S.W.2d 922, 935 (Tex. 1998) ("A compensable regulatory taking can also occur when governmental agencies impose restrictions that either (1) deny landowners of all economically viable use of their property, or (2) unreasonably interfere with landowners' rights to use and enjoy their property.").

See Patel v. Tex. Dep't of Licensing & Regulation , 469 S.W.3d 69, 77 (Tex. 2015) (sustaining constitutional due process challenges to licensing rules and regulations); Howeth Investments, Inc. v. City of Hedwig Village , 259 S.W.3d 877, 903 (Tex.App.-Houston [1st Dist.] 2008, pet. denied) (entertaining constitutional vagueness challenge to zoning ordinance).

This case was transferred to us from the 3rd Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. We apply the precedents from that court where they might conflict with our own. Tex.R.App.P. 41.3.

A seep is defined as a small spring, or place where a fluid, such as water, oozes slowly to the surface and forms a small pond. Webster's Third New Int'l Dictionary 2056 (2002).

Hunt v. City of Diboll , No. 12-17-00001-CV, --- S.W.3d ----, ----, 2017 WL 7663041, at *10-11 (Tex.App.-Tyler Nov. 8, 2017, pet. filed) ("The UDJA allows courts to declare relief-i.e., construe statutes-whether or not further relief is or could be claimed."); Doe v. Board of Directors of State Bar of Texas , 03-15-00007-CV, 2015 WL 6656216, at *4 (Tex.App.-Austin Oct. 27, 2015, pet. denied) (mem. op.)(not designated for publication)("On its face, this request for declaratory relief appears to be a request for statutory interpretation that would fall within the exception, allowing suit against the Board and the Commission."); Montrose Management Dist. v. 1620 Hawthorne, Ltd. , 435 S.W.3d 393, 404 (Tex.App.-Houston [14th Dist.] 2014, pet. denied) ("As noted above, the UDJA waives a governmental entity's immunity for a declaration construing an ordinance or statute.").

Town of Shady Shores v. Swanson , No. 02-15-00338-CV, 544 S.W.3d 426, 435-36, 2018 WL 472902, at *4 (Tex.App.-Fort Worth Jan. 18, 2018, no pet. h.) ("The Town next argues that the UDJA does not waive governmental immunity when a plaintiff, like Swanson, seeks a declaration of her rights under a statute or other law. On this point, the Town is correct."); Becky, Ltd. v. City of Cedar Park , No. 03-15-00259-CV, 2017 WL 2224527, at *6 (Tex.App.-Austin May 19, 2017, no pet.) (mem. op.)(not designated for publication)(expressly rejecting claim that DeQueen permits all suits to construe statutes or ordinances); Ex parte Springsteen , 506 S.W.3d 789, 798-99 (Tex.App.-Austin 2016, pet. denied) ("[The Supreme Court] has squarely repudiated the once-widespread notion that the UDJA confers some broader right to sue government to obtain 'statutory construction' or a 'declaration of rights.' "); McLane Company, Inc. v. Texas Alcoholic Beverage Comm'n , 514 S.W.3d 871, 876 (Tex.App.-Austin 2017, pet. denied) ("Precedent from the Texas Supreme Court and from this Court compels us to conclude that the UDJA does not waive sovereign immunity for 'bare statutory construction' claims.").

The parties attached complete copies of Chapters 25-4 and 25-8, and only the definition section of 25-1 to the plea and responses below. We are required to construe enactments as a whole, rather than looking to isolated provisions. See TGS-NOPEC Geophysical Co. v. Combs , 340 S.W.3d 432, 439 (Tex. 2011). Accordingly, we have considered all of Title 25. See Tex.R.Evid. 204(a),(b)(1)(a court make take judicial notice of municipal ordinances on its own); Amarillo v. Railroad Commission of Texas , 511 S.W.3d 787, 794 (Tex.App.-El Paso 2016, no pet.) (taking notice of city ordinances). The Code is available through the City's official website at https://library.municode.com/TX/Austin/codes/land_development_code?nodeId=TIT25LADE_CH25-1GEREPR_ART4APAP_DIV1GEPR_S25-1-61ORPR (last reviewed March 7, 2018).

The four predicates for development are (in order): (1) zoning; (2) subdivision; (3) site plan; and (4) a building permit. City Code, ch. 25-1, § 25-1-61. The property was already zoned for residential construction. Section 25-5-2 (B) appears to exempt construction of a single-family residences from the requirements of a site plan when not in a flood plain, or where it would have an insignificant effect on a waterway. The Tabrizis include excerpts from the deposition of the environmental officer that the building permit application process for a single-family home does not always include a thorough environmental review under Chapter 25-8's watershed protection rules. The subdivision/platting stage might then be the only opportunity to consider the environmental impact of a project such as this.

The environmental officer also expressed that he was not responsible for platting, and does not enforce that section of the code, though he is generally familiar with it.