COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | | |
|---|---|---|---|
| CITY OF EL PASO, | § | No. 08-21-00147-CV | |
| Appellant, | § | Appeal from the | |
| v. | § | 384th Judicial District Court | |
| JOSEPH C. PICKETT, | § | of El Paso County, Texas | |
| Appellee. | § | (TC# 2020DCV3514) | |

## O P I N I O N

Appellee Joseph C. Pickett petitioned for monetary and declaratory relief regarding a proposed increase in the "Environmental Franchise Fee" (the Fee), collected by the City from customers of El Paso Water.[1] The City filed a plea to the jurisdiction, which the trial court denied. In two issues on appeal, the City challenges Pickett's standing to file suit, and whether he had established a valid waiver of governmental immunity. We affirm.

## I. FACTUAL BACKGROUND

As a resident of the City of El Paso, Pickett pays taxes on his properties. He filed a claim for declaratory relief against the City of El Paso pursuant to the Texas Uniform Declaratory

---

[1] In the trial record, the Fee is referred to by a variety of names such as: "Environmental Franchise Fee," "ESD Fee," "PSB Infrastructure Franchise Fee," and "FRANCHISE FEE (NO TAX)."

Judgments Act and the Texas Constitution. *See* TEX. CONST. art. I, § 19; TEX. CIV. PRAC. & REM. CODE ANN. § 37.004.

By his suit, Pickett alleged he received notice in his water bill that the "Environmental Franchise Fee" charged to customers would increase 50% for residential customers, and 33% for commercial customers. He alleged the insert failed to provide information on the specific use of the Fee, or how it was calculated. At most, he claimed, the notice indicated the Fee would fund public safety equipment and street maintenance. On his bill, the Fee appeared as the "ESD" fee. He claims he continues to be assessed these fees on an ongoing basis for all his properties.

Picket further described that he learned additional information after he submitted a request for information under the Public Information Act. He alleged the City's response, which referred to the Fee as the "PSB Infrastructure Franchise Fee," was imposed by El Paso Water to compensate for wear and tear on streets by the utility's vehicles, and for the use of streets and rights of way for utility pipelines. Pickett's petition acknowledged he was uncertain as to whether the PSB fee is the same as, or a part of, the ESD fee.

He further asserts the Fee was implemented by City of El Paso Ordinance 018829 (the Ordinance), adopted on August 14, 2018, stating, in pertinent part:

> The Department of Environmental Services shall be authorized to charge the established fee as a related cost to providing the solid waste disposal utility to service due to the wear and tear on the City's rights-of-way caused by the use of the City sanitation vehicles in providing the utility service, and that the reasonable return generated by the franchise fee be transferred to the City general fund to be appropriated by the City Council as deemed appropriate.[2]

---

[2] El Paso, Tex., Ordinance 018829 (Aug. 14, 2018).

He claims the Ordinance was purportedly adopted pursuant to Section 364.034 of the Texas Health and Safety Code. Picket further alleges the City's fiscal year 2020 budget resolution, adopted in August 2019, stated in pertinent part:

61. That the environmental service franchise fee will be used as follows:

$6,600,000 for residential street maintenance.

$2,700,000 for the purchase and acquisition of Fire Department replacement vehicles.

$1,300,000 for Police Department major capital equipment.

By his petition, Pickett alleged the City was collecting the Fee for a purpose not permitted by law. Specifically, he alleged:

Even if the City could actually[,] separately identify the costs of the 'wear and tear on City's rights-of-way caused by the use of the City sanitation vehicles in providing the utility service' and somehow distinguish it from the costs of the wear and tear on the City's rights-of-way caused by all other users, and we do not believe it can, it appears not to have even attempted to do so. Further, the City admits in its budget document that $4 million of the approximately $10.6 million to be collected annually through this fee will be used for purposes completely unrelated to the statutory authority for the fee, which is only to be used for solid waste disposal services, and that is only if Plaintiff accepts the City's completely unsupported number for 'wear and tear costs' of the solid waste disposal service as the rationale for spending the balance on street maintenance.

Pursuant to the UDJA, Pickett sought a declaratory judgment construing the application of the City's ordinances to the facts alleged in his pleading. He contended the Ordinance and state law had been improperly construed "to allow the City to obtain funds for street maintenance and fire and police department equipment through what is supposed to be a fee for solid waste disposal services."

The City filed a plea to the jurisdiction objecting to the trial court's exercise of subject matter jurisdiction over the cause of action. First, the City asserted that Pickett lacked standing

3

because he did not plead a particularized injury. Second, the City maintained Pickett had failed to properly plead a waiver of the City's governmental immunity. Third and finally, the City contended there was no cause of action for state constitutional claims. After hearing argument, the trial court denied the City's plea to the jurisdiction by written order. This interlocutory appeal followed.

## II. STANDARD OF REVIEW

Sovereign immunity from suit defeats a trial court's subject matter jurisdiction unless the state expressly consents to suit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Like sovereign immunity, governmental immunity operates to afford similar protection to cities and other subdivisions of the State. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). The UDJA generally permits a person who is interested in a deed, or whose rights, status, or other legal relations are affected by a statute, to obtain a declaration of rights, status, or other legal relations thereunder. *Tex. Transp. Comm'n v. City of Jersey Village*, 478 S.W.3d 869, 876 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). "While the [U]DJA waives sovereign immunity for certain claims, it is not a general waiver of sovereign immunity." *Tex. Parks & Wildlife Dept. v. Sawyer Trust,* 354 S.W.3d 384, 388-89 (Tex. 2011). "Consequently, sovereign immunity will bar an otherwise proper [U]DJA claim that has the effect of establishing a right to relief against the State for which the Legislature has not waived sovereign immunity." *Id.*

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a court has subject matter jurisdiction is a question of law. *Texas Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). The determination of whether a trial court has subject matter jurisdiction begins with the pleadings.

4

*Id.* The plaintiff's pleadings must "allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Whether a party has met its initial pleading burden is a question of law reviewed de novo. *Turner v. Robinson*, 534 S.W.3d 115, 122 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citing *Miranda*, 133 S.W.3d at 226).

We must construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id.* at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

### III. STANDING

In its first issue, the City asserts Pickett does not have standing to sue to the City. Standing is a constitutional prerequisite to maintaining suit, which is determined at the time suit is filed in the trial court. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). As a component of subject matter jurisdiction, we review a claimant's standing de novo. *Id.* "As a general rule of Texas law, to have standing, unless it is conferred by statute, a plaintiff must demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Williams v. Lara,* 52 S.W.3d 171, 178 (Tex. 2001).

Generally, taxpayers do not have a right to bring suit to contest government decision-making because "[g]overnments cannot operate if every citizen who concludes that a public

official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review." *Bland*, 34 S.W.3d at 555 (quoting *Osborne v. Keith*, 177 S.W.2d 198, 200 (Tex. 1944)). But Texas law has a long-established exception to this general rule. *Williams,* 52 S.W.3d at 179–80. In Texas, taxpayers generally have standing to enjoin the illegal expenditure of public funds, and otherwise need not demonstrate a particularized injury. *Id.*; *Bland*, 34 S.W.3d at 556. "To have standing as a taxpayer to challenge government expenditures, a plaintiff must show two things: (1) that the plaintiff is a taxpayer; and (2) that the public funds are expended on . . . allegedly illegal activity." *Jones v. Turner*, 646 S.W.3d 319, 323 (Tex. 2022) [Internal quotation marks omitted]. A taxpayer may maintain an action solely to challenge proposed illegal expenditures; he or she may not sue to recover funds previously expended or challenge expenditures that are merely "unwise or indiscreet." *Williams,* 52 S.W.3d at 180. Taxpayer standing is divided into three categories—federal, state, and municipal—with municipal taxpayer standing involving a more lenient test. *See id.* ("Municipal taxpayers need only establish that they pay taxes to the relevant entity, and that public funds are expended on the allegedly unconstitutional activity.").

We begin with the first element. Pickett alleged he owns property in the City of El Paso and is a taxpayer. The City does not dispute that Pickett pays taxes on the properties he owns.[3] Accordingly, we conclude Pickett met the first requirement of taxpayer standing. *See Williams*, 52 S.W.3d at 180.

---

[3] The City argues for the first time in its reply brief that Pickett "is not a taxpayer" because he did not allege the challenged fee was a tax. Pickett filed a motion to strike this new argument. We carried the motion to consider with the merits of the appeal. New or additional issues raised in a reply brief are untimely and will not be considered absent express permission from the appellate court allowing the new or additional issues. *See Collin Cnty. v. Hixon Family P'ship, Ltd.,* 365 S.W.3d 860, 877 (Tex. App.–Dallas 2012, pet. denied); *Rogers v. City of Fort Worth,* 89 S.W.3d 265, 284 (Tex. App.–Fort Worth 2002, no pet.); Tex. R. App. P. 38.7. Thus, we grant Pickett's motion and we do not consider the City's newer argument.

Turning to Pickett's suit, he seeks declaratory relief that the City's ordinance and state law were improperly construed to allow the imposition of an illegal fee and prevention of the future application of the fees. Pickett alleges the ordinance was improperly construed to "allow the City to obtain funds for street maintenance and fire and police department equipment through what is supposed to be a fee for solid waste disposal services." The City's plea suggested Pickett must allege a particularized injury to have standing to challenge the fees. Although it is true plaintiffs who seek the judicial invalidation of a city ordinance generally must allege a particularized injury, taxpayer standing is an exception to this usual requirement. *See Bland*, 34 S.W.3d at 555–56; *Perez v. Turner*, 653 S.W.3d 191, 200 (Tex. 2022). When a taxpayer requests an injunction against the expenditure of an illegally collected tax, the court may or may not be required to decide if the ordinance is invalid. *Perez*, 653 S.W.3d at 200. Therefore, we look to the gravamen of the claim and to whether "[t]he rationale underlying taxpayer standing applies" to such claims. *Jones*, 646 S.W.3d at 324.

Here, Pickett's claim is that the City's expenditure of the charged fee is outside the scope of the statutory authority granted by the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 364.034. Pickett alleges the Texas Health and Safety code only provides that a public agency may charge a fee for offering solid waste disposal service. According to Pickett, the collected funds are being spent in accordance with the City's 2022 Budget Resolution, which permitted the purchase and acquisition of Fire Department replacement vehicles and Police Department capital equipment. Pickett's suit pursues the prevention of future application of the fee. He seeks declaratory relief regarding the future improper expenditure. *Jones*, 646 S.W.3d at 324 ("But when the law requires that a certain amount of money be directed to a specific service, and the plaintiff alleges that it is being directed and spent elsewhere, the taxpayer has alleged an

7

illegal expenditure sufficient to confer taxpayer standing."); *Perez*, 653 S.W.3d at 201 ("We required the plaintiffs to show that measurable, significant public funds that would not otherwise have been spent were truly at stake in order to assert taxpayer standing. But we did not require the plaintiffs, as a prerequisite to standing, to demonstrate that the *allegedly* illegal activity was *actually* illegal.").

The City asserts that because Pickett alleged the charged fee is inconsistent with the statutory authority for the fee, he failed to establish standing. The City argues Pickett's lawsuit mirrors a case arising out of our sister court in Fort Worth. *See City of Arlington v. Scalf*, 117 S.W.3d 345, 346 (Tex. App.—Fort Worth 2003, pet. denied). There, a resident of the city filed suit alleging the street maintenance fee was unlawful because it was a tax that the city was unauthorized to impose. *Id.* at 346-47. The resident contended the city had violated his due process rights, sought an injunction to prohibit the collection of the fee, and asked for a refund of the fees collected. *Id.* On appeal, the Fort Worth court of appeals held the resident did not have standing to sue the city because he failed to show how he suffered any unique harm different from that suffered by the thousands of other city property owners—who were all customers of the city's water utility and were charged the same street maintenance fee. *Id.* at 348. We conclude, however, that *Scalf* is distinguishable. Here, Pickett does not challenge the City's ability to charge such a fee, but rather, he alleges the City is not permitted to expend the collected fees in the manner it intends. Additionally, Pickett asserted standing through the taxpayer exception and did not contend he suffered individualized harm as did the plaintiff in *Scalf*. *Id*. Accordingly, we determine the City has failed to show Pickett did not properly allege taxpayer standing.[4]

---

[4] The City's brief also asserts an argument that Pickett failed to establish standing under Article I, Section 19 of the Texas Constitution. However, Pickett did not assert standing under the Texas Constitution but under the taxpayer exception. For this reason, we do not further address the City's arguments.

We overrule the City's first issue.

## IV. WAIVER OF IMMUNITY

In its second issue, the City asserts Pickett failed to properly plead or show any waiver of governmental immunity. In Pickett's petition, he asserts the City is not immune from suit because sovereign immunity is waived under the Uniform Declaratory Judgments Act (UDJA). The Act expressly allows for a "person . . . whose rights, status, or other legal relations are affected by a . . . municipal ordinance . . . [to] have determined any question of construction or validity arising under the . . . ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). Thus, among other relief, a party may seek a declaratory judgment regarding the construction or validity of an ordinance. *See id.* When declaratory relief is sought, all "persons" who have or claim any interest that would be affected by the declaration must be made parties. *See id.* § 37.006(a). A person "means an individual, partnership, joint-stock company, unincorporated association or society, or municipal or other corporation of any character." *Id.* § 37.001.

> The UDJA provides:
>
> In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.

*Id.* § 37.006(b). The UDJA clearly and unambiguously waives the governmental immunity of municipalities in any action for declaratory judgment that involves the validity of a municipal ordinance. *See id.* But, the Act does not grant a trial court's subject matter jurisdiction—it is "merely a procedural device for deciding cases already within a court's jurisdiction[.]" *Texas Ass'n of Bus.*, 852 S.W.2d at 444; *see also Tabrizi v. City of Austin*, 551 S.W.3d 290, 297 (Tex. App.—

9

El Paso 2018, no pet.). Accordingly, the Act does not act as a general waiver of sovereign immunity, rather it only waives immunity for certain claims. *Tabrizi*, 551 S.W.3d at 297.

The City urges that this Court is required to determine if the substance of Pickett's claim "falls under the limited legislative waivers of immunity provided for in the Tort claims Act or any other legal authority for that claimed waiver." However, Pickett asserted a waiver of governmental immunity through the express provision of the UDJA, not the Tort Claims Act. The basis of Pickett's suit seeks to declare that the City's ordinance imposed illegal fees that were not in accordance with state law. Additionally, Pickett plead the unconstitutionality of the City's ordinance under Section 19 of the Texas Constitution.[5]

While Pickett challenges the City's actions under the ordinance by its expenditures, he also seeks a declaration as to the ordinance's validity. A provision of the UDJA expressly waives a municipalities' immunity for a declaratory judgment action involving the validity of a municipal ordinance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a); *see also Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011) ("[T]he state may be a proper party to a declaratory judgment action that challenges the validity of a statute."). Construing the pleadings liberally, as we must, we conclude Pickett has alleged claims that are not automatically barred by governmental immunity.

We overrule the City's second issue.

## V. CONCLUSION

We affirm.

---

[5] In its reply brief, the City argues Pickett failed to establish a waiver of immunity under Article I, Section 9 of the Texas Constitution. However, having concluded that Pickett alleged a waiver of governmental immunity through the UDJA, it is unnecessary for us to reach this alternative argument. TEX. R. APP. P. 47.1

GINA M. PALAFOX, Justice

December 28, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.