

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DON ZIMMERMAN, | § | |
| | | No. 08-20-00039-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 98th Judicial District Court |
| CITY OF AUSTIN and SPENCER CRONK, | § | |
| in his Official Capacity as City Manager of | | of Travis County, Texas |
| the City of Austin, | § | |
| | | (TC# D-1-GN-19-005930) |
| Appellees. | § | |

# OPINION

As part of its Fiscal Year 2019-2020 budget, the City of Austin allocated $150,000 for abortion access logistical support services; it directed Austin's health department to disperse the funds to qualified organizations through a competitive bidding process.[1] Appellant Don Zimmerman filed a lawsuit against the Appellees, the City of Austin and its City Manager (the "City Defendants"), in which he sought a declaration that the proposed expenditure violates state law. He also pled for a temporary and permanent injunction to prohibit the City Defendants from dispersing the funds. Zimmerman alleges that the proposed expenditure violates state law for two

---

[1] This case was transferred from the Third Court of Appeals as a part of the Texas Supreme Court's docket equalization efforts. We decide it in accordance with the precedent of the originating court to the extent required by TEX.R.APP.P. 41.3.

1

distinct reasons: (1) it conflicts with various unrepealed Texas statutes that made it a crime to aid and abet the procurement of an abortion, which he alleges are still viable even after the U.S. Supreme Court found them unconstitutional; and (2) the expenditure of these funds violates the prohibition in the Texas Constitution against providing "gifts" of public money to private individuals or associations. For different reasons, the trial court granted the City Defendants' plea to the jurisdiction, dismissed Zimmerman's first cause of action with prejudice, while dismissing the second cause of action without prejudice to his right to re-file his lawsuit in the future. For the reasons set forth below, we conclude that the trial court correctly disposed of the suit below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The City of Austin's Budget Provision

On September 10, 2019, the Austin City Council passed the City's Fiscal Year 2019-2020 budget. One item in the budget included an allocation of $150,000 to its health department, Austin Public Health ("APH"), for the purpose of providing logistical and support services such as transportation, childcare, and case management to further abortion access for Austin residents (the "Budget Provision"). The City directed APH to distribute that funding through a competitive bidding process and further directed APH to ensure that no abortion providers or their affiliates would receive the funds. The City added this limitation to comply with recently enacted legislation that prohibits public funds from being diverted to such entities.[2] *See* TEX.GOV'T CODE §§ 2272.001-.005.

---

[2] Section 2272.003 of the Government Code provides that: "Except as provided by Subsection (b), a governmental entity may not enter into a taxpayer resource transaction with an abortion provider or an affiliate of an abortion provider." TEX.GOV'T CODE ANN. § 2272.003(a). Zimmerman acknowledges that the Budget Provision does not violate this newly-enacted Code provision, as the provision only proposes to disperse funds to organizations that provide women with assistance in accessing an abortion, which do not come within the statutory definition of either an abortion provider or an affiliate.

2

## B. Zimmerman's Lawsuit

Zimmerman, a homeowner who pays property taxes in Austin, subsequently sued the City of Austin and the City Manager contending that they were acting in an "ultra vires" or illegal manner by providing expenditures of taxpayer money to abortion-assistance organizations. In his petition, Zimmerman alleges his entitlement to challenge the City's proposed expenditure under the Uniform Declaratory Judgment Act (UDJA), and that the trial court has jurisdiction to hear his ultra vires claims against the City Manager in light of the Texas Supreme Court's holding in *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

Zimmerman's petition sets forth two causes of action. First, he alleges that the City Defendants' proposed expenditures are "ultra vires" because they violate the state's abortion laws. Zimmerman specifically referenced a series of Texas statutes, which among other things, made it a crime to assist a woman in procuring an abortion.[3] These statutes, were, however, the same criminal abortion statutes that the U.S. Supreme Court declared unconstitutional in *Roe v. Wade*, 410 U.S. 113, 166, (1973). Zimmerman asserts, however, that because the Texas Legislature never repealed the statutes,[4] they remain in effect for any application outside of that addressed in *Roe v. Wade*. And as applicable here, Zimmerman alleges that the City Defendants proposed

---

[3] Zimmerman also relies on Section 7.02 of the Penal Code that in more general terms makes it a crime to solicit, encourage, direct, aid, or attempt to aid another person to commit a crime. TEX.PENAL CODE ANN. § 7.02(a). In order to obtain a conviction for aiding and abetting, the State must prove conduct constituting an underlying offense plus an act by the defendant done with the intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex.Crim.App. 1985) (en banc); *see also United States v. McCoy*, 539 F.2d 1050, 1064 (5th Cir. 1976) (existence of crime is an element of the offense of aiding and abetting), *cert. denied*, 431 U.S. 919 (1977). Zimmerman relies on the Texas abortion statutes as the predicate crime for his Section 7.02 theory.

[4] The Texas statutes that criminalized abortion were originally found in Articles 1191 through 1196 of the Texas Penal Code. After the U.S. Supreme Court ruled that the Texas criminal abortion statutes were unconstitutional, rather than repeal the statutes, the Texas Legislature renumbered them and placed them in Articles 4512.1 through 4512.6 of the Texas Revised Civil Statutes, found in Chapter 6½ (entitled "Abortion") of Title 71 (entitled "Health-Public"). Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 5(a), 1973 Tex.Gen.Laws 995 (codified at TEX.REV.CIV.STATS.ANN. ARTS. 4512.1-.6). Although Title 71 was repealed in all other respects at various times, the State Legislature did not repeal the six articles in question.

3

expenditures that would in effect assist women in obtaining an abortion in conflict with these unrepealed statutes.

Second, Zimmerman alleges that the City Defendants' proposed expenditures were ultra vires because they violate the Texas Constitution's Gift Clause. In particular, Zimmerman relies on Article III, Section 52(a) of the Texas Constitution, known as the "Gift Clause," which prohibits the State and its political subdivisions from granting "public money or thing of value in aid of, or to any individual, association or corporation whatsoever . . ." *See* TEX.CONST. ART. III, § 52(a); *see also Bullock v. Calvert*, 480 S.W.2d 367, 369 (Tex. 1972) ("[U]nder Art. 3, §§ 51 and 52 of the Constitution there may be no grant of public money for private individuals or associations."). Zimmerman recognizes that the Gift Clause allows governmental entities to transfer public funds to private entities if it serves a legitimate purpose, but he alleges that providing funds to abortion-assistance organizations serves no such purpose, as a matter of both law and policy.

## C. The Plea to the Jurisdiction

The City Defendants answered and filed, among other things, a plea to the jurisdiction, contending that the trial court lacked jurisdiction to hear either of Zimmerman's causes of action.

### 1. *Zimmerman's first cause of action: the alleged conflict with the abortion statutes*

In their plea to the jurisdiction, the City Defendants first argued that Zimmerman, as a private citizen, had no right to enforce a criminal statute. Accordingly, the City Defendants contend he lacks standing to assert this claim. In the alternative, the City Defendants argued that the claim was "invalid on its face," as the U.S. Supreme Court had expressly held that the statutes upon which the claim was based were unconstitutional in *Roe v. Wade*, thereby rendering them void and of no force or effect.

4

*2. Zimmerman's second cause of action: the alleged conflict with the Gift Clause*

The City Defendants next argued that the trial court should dismiss Zimmerman's Gift Clause claim, contending that it was not ripe for review because the City had not yet dispersed any funds pursuant to the Budget Provision, nor entered into a contract for an outside agency to do so. Consequently, it was uncertain whether any money would in fact be dispersed, thereby rendering the question of whether any future disbursements would violate the Gift Clause contingent or hypothetical in nature. Alternatively, the City argued that the Gift Clause allows for payment of public money to private individuals and entities if it serves a legitimate purpose and affords a clear public benefit received in return. The City claimed a legitimate purpose would be served if any funds are ever disbursed.

*3. Whether the city was a proper defendant in the lawsuit*

And finally, the City argued that it was not a proper defendant in the lawsuit, pointing out that in his live pleading, Zimmerman labeled both of his claims for relief as being based on an "ultra vires" theory of liability, which may only be brought against city officials. Zimmerman, however, countered that he was not attempting to bring an ultra vires claim against the City, and that instead, his claims against the City were brought under the UDJA, which he argued entitled him to a declaration that the proposed expenditures under the Budget Provision were in conflict with Texas constitutional and statutory law.

**D. The Trial Court's Ruling**

The trial court granted the defendants' First Amended Plea to the Jurisdiction, and dismissed Zimmerman's first claim for relief with prejudice, and dismissed his second claim for relief without prejudice. This appeal followed.

## II. DISCUSSION

In two issues, Zimmerman contends that the trial court erred in granting the City Defendants' plea to the jurisdiction. In his first issue, he argues that the trial court erred in dismissing his first cause of action with prejudice, renewing his arguments that the City Defendants' proposed expenditures conflict with the unrepealed Texas criminal abortion statutes that prohibit furnishing the means for procuring an abortion. In his second issue, he argues that the trial court erred in dismissing his second cause of action without prejudice, arguing that the issue of whether the proposed expenditures conflict with the Texas Constitution's Gift Clause provision is ripe for review, and should be considered on its merits.

### A. Standard and Scope of Review

This case comes to us on a granted plea to the jurisdiction. Governmental immunity implicates the trial court's subject matter jurisdiction and a defendant may properly raise that issue in a plea to the jurisdiction. *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). A plea to the jurisdiction challenges a trial court's authority to decide a case. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). In a plea to the jurisdiction, a defendant may challenge either the plaintiff's pleadings or the existence of jurisdictional facts on the ground that they do not support subject matter jurisdiction. *Id.* When a plea to the jurisdiction challenges only the pleadings, the trial court must construe the pleadings liberally in favor of the plaintiff--accepting the allegations as true--and look to the plaintiff's intent in its pleadings. *Texas Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002); *Miranda*, 133 S.W.3d at 226-27.

At the pleading stage, a plaintiff carries the burden of alleging sufficient facts to "demonstrate that the trial court has subject matter jurisdiction over its claims." *See City of*

*El Paso v. Viel*, 523 S.W.3d 876, 883 (Tex.App.--El Paso 2017, no pet.); *see also Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (the plaintiff has the burden of pleading facts which affirmatively show that the trial court has jurisdiction). The question of whether a plaintiff has alleged sufficient facts to meet this burden is a question of law that we review de novo. *Miranda*, 133 S.W.3d at 226; *Viel*, 523 S.W.3d at 883.

If the pleadings do not allege facts sufficient to affirmatively demonstrate jurisdiction, but the pleading defects are curable by amendment, the issue is one of pleading sufficiency, and the plaintiff should be afforded an opportunity to amend. *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839-40 (Tex. 2007). However, if the pleadings affirmatively negate the existence of the trial court's jurisdiction by revealing an incurable defect, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 840; *Tabrizi v. City of Austin*, 551 S.W.3d 290, 303 (Tex.App.--El Paso 2018, no pet.).

**B. The Continuing Validity of the Criminal Abortion Statutes is a Linchpin of Zimmerman's First Claim**

Because a municipality is a political subdivision of the State, both the municipality and its agents generally have governmental immunity, which protects them from lawsuits when the municipality is performing a governmental function, unless the Legislature has expressly waived that immunity.[5] *See City of Austin v. Util. Associates, Inc.*, 517 S.W.3d 300, 307-08 (Tex.App.--Austin 2017, pet. denied), *citing inter alia, Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006). Zimmerman sued the City under the UDJA. That Act provides a limited waiver of immunity for political subdivisions, including municipalities, when a party challenges the validity

---

[5] Governmental functions are those "that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public, including but not limited to . . . health and sanitation services . . ." TEX.CIV.PRAC.& REM.CODE ANN. § 101.0215 (a)(2). The parties do not contest that the City acted in its governmental capacity when it enacted the Budget Provision.

7

or constitutionality of a statute or an ordinance.[6]  *See Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621-22 (Tex. 2011).  And here, Zimmerman contends that he has a valid UDJA claim against the City, for which its immunity was waived, because he claims the municipal ordinance approving the budget violates Texas criminal law--specifically the Texas abortion statutes.

Zimmerman also seeks to circumvent governmental immunity through a narrow application of taxpayer standing.  A citizen does not generally have a right to bring a suit to challenge a governmental action or to assert a public right, unless the citizen can demonstrate a particularized interest in a conflict, or a particular injury, distinct from that of the general public.  *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555-56 (Tex. 2000); *see also Williams v. Lara*, 52 S.W.3d 171, 180 (Tex. 2001) (recognizing that "'[g]overnments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review.").  However, Texas recognizes an exception to this general rule, providing that a taxpayer has standing to sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury.  *See Lara*, 52 S.W.3d at 178-79; *see also Texans Uniting for Reform & Freedom v. Saenz*, 319 S.W.3d 914, 919-20 (Tex.App.--Austin 2010, pet. denied) (recognizing that a taxpayer has a justiciable interest in ensuring that tax money is not spent illegally).  Implicit in this rule are two requirements: "(1) that the plaintiff is a taxpayer; and (2) that public funds are expended on the allegedly illegal activity."  *Lara*, 52 S.W.3d at 179.  So key to Zimmerman's standing claim is the premise that

---

[6] The UDJA provides that: "A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." TEX.CIV.PRAC.& REM.CODE ANN. § 37.004(a).

the expenditure was on an illegal activity, which in turn relies on the continued vitality of the Texas abortion statutes.

Finally, a lawsuit against a government actor in their official capacity is effectively a suit against the entity, and the actor generally has the same immunity enjoyed by the entity. *See Univ. of Texas Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 401 (Tex. 2011); *see also City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex. 2009). Texas recognizes an exception to that rule, however, for "ultra vires" acts. *Id.* at 380. But in order to bring an ultra vires claim against a government actor, the plaintiff must "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act" imposed by law. *Chambers-Liberty*, 575 S.W.3d at 344-45. Thus, Zimmerman's ultra vires claim against a city official is premised on compelling city officials to comply with statutory or constitutional provisions, or in other words, to bring future acts into compliance with the law. *See Heinrich*, 284 S.W.3d at 372, 374; *see also Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016) (to meet the ultra vires exception to governmental immunity, a plaintiff must allege, and ultimately prove, that the officer is either acting without legal authority, or has failed to perform a purely ministerial act). As the Austin court has recognized, the requirement that a taxpayer action be brought to restrain an illegal expenditure "overlaps somewhat with the ultra vires exception to sovereign or governmental immunity, through which a claimant can sue a government official in his official capacity for prospective injunctive or declaratory relief to restrain the official from exceeding statutory authority." *Gattis v. Duty*, 349 S.W.3d 193, 204 (Tex.App.--Austin 2011, no pet.), *citing Texans Uniting for Reform & Freedom*, 319 S.W.3d at 920. And at the core of the ultra vires claim, is Zimmerman's contention that the city official is violating the Texas abortion statutes.

9

### C. The Criminal Abortion Statutes Upon Which the First Claim is Premised are Ineffective to Impose a Duty

In Issue One, Zimmerman contends that the proposed expenditures in the Budget Provision are illegal because they conflict with the State's criminal abortion laws--despite the fact that these very same laws were declared unconstitutional by the United States Supreme Court in *Roe v. Wade* over 47 years ago. *Roe*, 410 U.S. at 117-119. At the time *Roe v. Wade* was decided, Texas's anti-abortion statutes made it a crime to perform an abortion except with respect to "an abortion procured or attempted by medical advice for the purpose of saving the life of the mother." *Id*. at 118. In addition, the Penal Code further provided that an individual who "furnishe[d] the means for procuring an abortion knowing the purpose intended" was guilty as an "accomplice."[7] *Id*. at 117 n.1. In its opinion, the Court expressly held that "a state criminal abortion statute of the current Texas type, that excepts from criminality only a life-saving procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is violative of the Due Process Clause of the Fourteenth Amendment." *Id.* at 164. In particular, the Court held that not only was Article 1196, which criminalized abortion, unconstitutional, but that "the Texas abortion statutes, as a unit, must fall," as it was impossible to separate them out. *Id.* at 166.

---

[7] The *Roe* opinion identified and set out the relevant text of five specific statutes at issue: Article 1191 ("If any person shall designedly administer to a pregnant woman or knowingly procure to be administered with her consent any drug or medicine, or shall use towards her any violence or means whatever externally or internally applied, and thereby procure an abortion, he shall be confined in the penitentiary not less than two nor more than five years; if it be done without her consent, the punishment shall be doubled."); Article 1192 ("Whoever furnishes the means for procuring an abortion knowing the purpose intended is guilty as an accomplice." ); Article 1193 ("If the means used shall fail to produce an abortion, the offender is nevertheless guilty of an attempt to produce abortion, provided it be shown that such means were calculated to produce that result, and shall be fined not less than one hundred nor more than one thousand dollars."); Article 1194 ("If the death of the mother is occasioned by an abortion so produced or by an attempt to effect the same it is murder."); and Article 1196 ("Nothing in this chapter applies to an abortion procured or attempted by medical advice for the purpose of saving the life of the mother."). *Roe v. Wade*, 410 U.S. at 117 n.1.

10

Despite the Supreme Court's holdings, the Texas Legislature did not repeal its criminal abortion statutes, and instead when enacting a new Penal Code in 1974, the State Legislature recodified and transferred those laws to Articles 4512.1 through 4512.6 of the Revised Civil Statutes. Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 5(a), 1973 Tex.Gen.Laws 995 (codified at TEX.REV.CIV.STATS.ANN. 4512.1-.6). In doing so, the Legislature, expressly provided that the purpose of the transfer was not to repeal the statutes, but to transfer them to "the civil statutes or other appropriate places within the framework of Texas statute law, without reenactment and without altering the meaning or effect of the unrepealed articles . . . ." *Id*.; *see also Chase v. State*, 448 S.W.3d 6, 24 (Tex.Crim.App. 2014) (holding that the Legislature's decision in 1973 to transfer certain criminal statutes from the Penal Code to the Revised Civil Statutes was "purely a housekeeping measure, which was not meant to change the substantive meaning of the statute"). Because the statutes were never repealed, Zimmerman contends that the abortion statutes "continue to exist as the law of Texas." And in turn, he contends that the City is therefore prohibited from taking any action that is in violation of the statutes unless doing so would violate the federal Constitution by imposing an "undue burden" on women seeking abortions.[8]

Building on this argument, Zimmerman contends that a criminal statute that has been declared unconstitutional is not void for all purposes; instead, he contends that such statutes--if not repealed by the Legislature--must still be obeyed by government officials, and therefore, a citizen has a right to enforce the statutes through "civil litigation" to ensure that government officials are

---

[8] Part of the *Roe* opinion outlines at what stage in a pregnancy a state could regulate an abortion, and the extent to which it could do so. *Roe*, 410 U.S. at 164-165. That portion of the holding was later modified by *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 869, 870-72, 878 (1992) to impose an "undue burden" test, rather than the trimester framework as articulated in *Roe*.

in compliance with them. In making this argument, Zimmerman relies heavily on a footnote in the Texas Supreme Court's opinion in *Pidgeon v. Turner*, 538 S.W.3d 73 (Tex. 2017).

In *Pidgeon*, a petitioner had brought a taxpayer suit challenging a decision made by the City of Houston and its mayor to provide benefits to the same-sex spouses of city employees. The petitioner there contended that providing benefits violated the Texas Constitution, a Family Code Provision, and a city ordinance that all prohibited the recognition of same-sex marriages.[9] *Id*. at 78. The trial court granted the petitioner relief, and the City appealed, but while the case was pending in the court of appeals, the U.S. Supreme Court issued its opinion in *Obergefell*, in which it held that same-sex couples had a constitutional "right to marry." *Obergefell v. Hodges*, 576 U.S. 644, 675-76 (2015). In particular, the Court ruled that similar statutes in four other states, which defined marriage as a union between one man and one woman, were unconstitutional to the extent that they excluded "same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples." *Id*. at 647. Shortly thereafter, in response to *Obergefell*, the Fifth Circuit upheld a lower court's ruling enjoining the State of Texas from enforcing the provisions in the Texas Constitution and the Family Code, or any other laws or regulations, that prohibit "a person from marrying another person of the same sex or recognizing same-sex marriage." *De Leon v. Abbott*, 791 F.3d 619, 624-25 (5th Cir. 2015). The state court of appeals then summarily reversed the trial court's injunction in *Pidgeon* based on *Obergefell* and *Del Leon*. *Parker v.*

---

[9] Article 1, Section 32 of the Texas Constitution provides that: "This state or a political subdivision of this state may not create or recognize any legal status identical or similar to marriage." TEX.CONST. ART. I, § 32. The statute, known as the "Defense of Marriage Act" (DOMA), provided that any marriage between persons of the same sex was void, and that neither the state or any agency or political subdivision of the State could give "effect to" any "right or claim to any legal protection, benefit, or responsibility asserted as a result of a marriage between persons of the same sex . . . in this state or in any other jurisdiction." TEX.FAM.CODE ANN. § 6.204(b), (c)(2). The Houston City ordinance contained similar language.

*Pidgeon*, 477 S.W.3d 353, 354 (Tex.App.--Houston [14th Dist.] 2015), *rev'd sub nom. Pidgeon v. Turner*, 538 S.W.3d 73 (Tex. 2017).

The Texas Supreme Court, however, reversed the court of appeal, holding that the case should be remanded to the trial court so it could consider the impact of both *Obergefell* and *DeLeon* on the petitioner's claims. *Pidgeon*, 538 S.W.3d at 83-84.[10] And in footnote 21 to its opinion, the Texas Supreme Court opined that Pidgeon was still able to bring his claim, despite the U.S. Supreme Court's ruling in *Obergefell*:

> We note that neither the Supreme Court in *Obergefell* nor the Fifth Circuit in *De Leon* "struck down" any Texas law. When a court declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it, even though the government may no longer constitutionally enforce it. Thus, the Texas and Houston DOMAs remain in place as they were before *Obergefell* and *De Leon*, which is why Pidgeon is able to bring this claim.

*Pidgeon v. Turner*, 538 S.W.3d at 88 n.21. Zimmerman construes this language to mean that unless and until the Legislature repeals a statute that has been declared unconstitutional, it must still be followed by the State and its political subdivisions, and that, in turn, a private citizen has the right to ensure that the government is acting in accordance with the statute. Zimmerman therefore argues that, like the taxpayer in *Pidgeon*, he too should be able to still bring his claim challenging the City of Austin's budget provision as being in conflict with the Texas Criminal abortion statutes, despite the U.S. Supreme Court's holding in *Roe v. Wade* declaring the statutes to be unconstitutional, given the fact that they have not been repealed and therefore still "remain in place." *Id*.

We have four problems with Zimmerman's reliance on footnote 21 from *Pidgeon*. First, the court's opinion in *Pidgeon* was focused on the fact that *Obergefell* did not directly address the

---

[10] On remand, the trial court dismissed all of Pidgeon's claims on February 19, 2019, and that ruling is again on appeal before the Houston 14th Court of Appeals. *Pidgeon v. Turner*, No. 14-19-00214-CV.

constitutionality of any laws in Texas, and the fact that the trial court had not yet had the opportunity to examine the scope and extent of *Obergefell*'s holding as it applied to the Texas laws at issue. *Id.* at 89; *see In re Occidental Chem. Corp.*, 561 S.W.3d 146, 173 (Tex. 2018) (citing *Pidgeon* for the proposition that before the Supreme Court will resolve a dispositive issue, the "preferred and proper process" is to allow a "complete vetting of the parties' potential arguments in the lower courts" so that the Court has a "full record" before it); *see also City of Fort Worth v. Rylie*, 602 S.W.3d 459, 469 (Tex. 2020) (citing *Pidgeon* for the proposition that where a question "presents an important issue of first impression in this Court, we decline to address the question in the first instance and defer instead for the court of appeals to address it after full briefing and argument by the parties.").

Second, the rationale expressed by footnote 21 does not necessarily mean the Texas abortion statutes still have any enforceable effect. There are legitimate arguments that a court does not simply expunge a statute from the lawbooks by declaring it unconstitutional. *See* Jonathan Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va.L.Rev. 933 (2018). One of those rationales is that in declaring a statute unconstitutional, a court does no more than declare that the courts will not enforce it (or in some cases, enjoin the executive branch from enforcing the law). *Id.* at 936. But even under that rationale, a court, including this Court, would have no basis to enforce the Texas abortion statutes. Another rationale cautions that a statute may only be unconstitutional as applied to a specific set of facts, and thus the statute might survive as to other applications. *Id.* at 984-85. But *Roe v. Wade* arose from a facial challenge to the Texas criminal abortions statutes, 410 U.S. at 120, which the Court sustained, further adding that it could not sever out the offensive portions of the statutes. [11] A final rationale for leaving a declared-

---

[11] The opinion concludes as follows:

unconstitutional-statute on the books is that the decision declaring the statute unconstitutional might someday itself be overturned. *See Mitchell*, 104 Va.L.Rev. at 949-50. And no doubt, there are those who someday hope to overturn *Roe v. Wade*, but that has not yet happened, and its holding is still binding that the Texas abortion statutes are facially unconstitutional.

A third problem with footnote 21 is that it has not been validated by subsequent opinions from the Texas Supreme Court. Instead, the Court has more recently treated statutes that have been declared unconstitutional as null and void. Writing two years after *Pigeon* was decided, the Court in *Ex parte E.H.*, recognized that an "unconstitutional law is void, and is no law," and that an offense created by an unconstitutional statute "is not a crime." 602 S.W.3d 486, 494 (Tex. 2020) (holding that petitioner was entitled to an expunction for a conviction that was based on a Penal Code provision declared to be facially unconstitutional, as such a conviction was "illegal and void."); *see also In re Lester*, 602 S.W.3d 469, 473, 475 (Tex. 2020) (holding that an individual who pled guilty to a Penal Code provision that had already been declared unconstitutional was "actually innocent" for purposes of being entitled to wrongful-imprisonment compensation, as an unconstitutional statute is "legally void from its inception."). Justice Blacklock writing in dissent in *Lester* and *E.H.* suggested the majority's decisions overrules *sub silentio* footnote 21 from

_____

Our conclusion that Art. 1196 is unconstitutional means, of course, that the Texas abortion statutes, as a unit, must fall. The exception of Art. 1196 cannot be struck down separately, for then the State would be left with a statute proscribing all abortion procedures no matter how medically urgent the case.

Although the District Court granted appellant Roe declaratory relief, it stopped short of issuing an injunction against enforcement of the Texas statutes. . . .

We find it unnecessary to decide whether the District Court erred in withholding injunctive relief, for we assume the Texas prosecutorial authorities will give full credence to this decision that the present criminal abortion statutes of that State are unconstitutional.

*Roe*, 410 U.S. 113, 166 (1973).

*Pidgeon.* *In re Lester*, 602 S.W.3d at 483 (Blacklock, J. dissenting); *see also Ex parte E.H.*, 602 S.W.3d at 502-03 (Blacklock, J. dissenting) (noting decision's inconsistency with footnote 21).

Fourth, and perhaps most relevant, is that Zimmerman is attempting to enforce a criminal statute, albeit in a civil context. If we take our cue from the highest criminal court in the State, the abortion statutes are no longer of force and effect. As the Court of Criminal Appeals recognized over a century ago, when a legislative act is declared to be unconstitutional, the act is "absolutely null and void," and has "no binding authority, no validity [and] no existence." *Ex parte Bockhorn*, 138 S.W. 706, 707 (Tex.Crim.App. 1911). That court further colorfully pronounced that an unconstitutional law should be viewed as "lifeless," as "if it had never been enacted," given that it was "fatally smitten by the Constitution at its birth." *Id.* at 707. Accordingly, the Court held that because such a law is "inoperative as though it never had been passed," it is a "misnomer to call such an act a law." *Id.* The general proposition that an unconstitutional law is void ab initio has been more recently upheld by the Texas Court of Criminal Appeals in a variety of contexts. *See, e.g.*, *Salinas v. State*, 523 S.W.3d 103, 121 (Tex.Crim.App. 2017) ("Declaring a statute facially unconstitutional is not finding constitutional court error or announcing a new court-made rule of criminal procedure; it is holding that the Legislature passed a statute so blatantly unconstitutional it should have never been passed."); *Smith v. State*, 463 S.W.3d 890, 895-96 (Tex.Crim.App. 2015) (criminal defendant was entitled to seek relief from a conviction for the first time on appeal where he was convicted under a statute later declared facially unconstitutional, as under such circumstances, "there is no valid law upon which to base the conviction that appellant challenges"); *Ex parte Lea*, 505 S.W.3d 913, 914-15 (Tex.Crim.App. 2016) (statute found to be unconstitutionally broad on its face was void from its inception and must be treated as if it never existed, and therefore, a conviction under the statute can be challenged

16

for the first time by way of post-conviction habeas corpus.).   Therefore, we are not surprised that our research cannot find any instance where the Texas abortion statutes have been substantively applied in any criminal case for the almost 47 years since the U.S. Supreme Court found them unconstitutional.[12]

*****

The U.S. Supreme Court in *Roe v. Wade* expressly held that the Texas criminal abortion statutes were unconstitutional.   *Roe*, 410 U.S. at 166.   As those statutes are the linchpin of Zimmerman's claim for standing, and his ability to state a claim that avoids governmental immunity, their nullity mandates that the City's plea to the jurisdiction was properly granted.

We overrule Issue One.

**D.   Zimmerman Gift Claim is Not Ripe for Review**

The City urged, and the trial court apparently agreed, that Zimmerman's Gift Clause claim was not ripe because the City has yet to bid out the contract under which these funds could be expended.   We agree.

*1.   Ripeness principles and the prohibition against advisory opinions*

Ripeness is an element of subject matter jurisdiction, and the question of whether a case is ripe for review is a legal question we review de novo.   *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).   In general, while

---

[12] The City Defendants also urge that the abortion statutes were "impliedly repealed" when the Texas Legislature enacted a variety of statutes regulating the performance of abortions which were in conflict with the criminal abortion statutes.   *See, e.g.*, *Grant v. State*, 505 S.W.2d 279, 282 (Tex.Crim.App. 1974) (recognizing that a "statute is repealed by implication whenever it becomes apparent from subsequent legislation that the Legislature does not intend the earlier act to remain in force, and the converse of this proposition is that no statute will operate as an implied repeal of an earlier statute, if it appears that the Legislature did not intend it so to operate.").   The Fifth Circuit reached that conclusion in *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) in which it held that by enacting a comprehensive set of civil regulations governing the availability of abortions and the practices and procedures of abortion clinics, Texas impliedly repealed its statutes criminalizing abortions, as the regulatory provisions cannot be harmonized with provisions that purport to criminalize abortions.   We need not reach this issue.

17

standing focuses on the question of who may bring an action, ripeness examines when that action may be brought. *See Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). The concept of ripeness emphasizes the need for a "concrete injury" and therefore, in order for a case to be ripe for review, the fact must have "developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Id.*; *see also Patel v. Texas Department of Licensing and Regulation*, 469 S.W.3d 69, 78 (Tex. 2015).

The ripeness doctrine avoids "premature adjudication" of issues that might turn on "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Patterson*, 971 S.W.2d at 442 (internal quotation marks omitted). In part, the doctrine emanates from the Constitutional prohibition against issuing advisory opinions, but it also rests in part on considerations of pragmatism and prudence, as it conserves judicial resources "for real and current controversies, rather than abstract, hypothetical, or remote disputes." *Id.*, *see also Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988) (the prohibition against issuing advisory opinions extends to cases that are not yet ripe for review).

A case is not ripe for review when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass, or in fact may never come to pass. *Patterson*, 971 S.W.3d at 443. Thus, in evaluating ripeness, we consider whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote. *Robinson*, 353 S.W.3d at 755.

### 2. Zimmerman's Gift Clause claim is not ripe for review

At the time Zimmerman filed his lawsuit, the City had not yet taken any of the steps necessary under the terms of the Budget Provision to begin making disbursements to an abortion-assistance organization. As Stephanie Hayden, APH's Director, explained in a declaration

18

attached to the City's plea to the jurisdiction, before the City could make any expenditures under the Budget Provision, APH would be required to put out and publicize an "RFA" (a Request for Application) soliciting applications from qualified abortion-assistance organizations. Thereafter, if it received any bids, APH would then hold a "bidders conference" at which applications from qualified organizations would be scored; if any bids were accepted at that time, the City would then be required to negotiate a social service contract with any chosen organization(s), after which the City Council would need to approve any proposed contracts before they could be finalized. She explained that as of the date she signed her Declaration on November 11, 2019, none of these steps had been taken. She further opined that it is possible that APH would never receive any applications from qualified organizations meeting the criteria set forth in the Budget Provision, and that no social services contracts would ever be signed.[13]

Zimmerman contends that this uncertainty is not a bar to hearing his claims, as the City has already made the determination to spend the funds as set forth in the Budget Provision, and therefore, there is at least a substantial risk that the challenged expenditures will be made. And, as Zimmerman points out, he has no standing to challenge the legality of past expenditures or past actions of city officials, and he argues that he should not be made to wait to file his lawsuit until the expenditures have already been made, or any lawsuit he could bring would be moot before it even began. *See Bland*, 34 S.W.3d at 557 (plaintiff's lawsuit based on taxpayer standing was moot where challenged expenditures had been fully made and no future expenditures remained pending).

---

[13] Further, the record is silent on whether the City subsequently entered into any contracts after the date that Hayden signed her declaration.

19

Although we agree that Zimmerman need not wait until an expenditure is actually made, he must at least wait until there is more certainty that it will be made, or in other words, he must wait until the proposed expenditures are not contingent on hypothetical events that may never take place. *See, e.g.*, *Blackard v. Schaffer*, No. 05-16-00408-CV, 2017 WL 343597, *8 (Tex.App.--Dallas Jan. 18, 2017, pet. denied) (mem. op., not designated for publication) (taxpayer's claim that county violated a local rule by approving excessive payments to an attorney pro tem was not ripe for review, where the attorney was required to submit his fee request to the court for approval, and no requests were pending at the time the petitioner filed his lawsuit); *see also Patterson*, 971 S.W.2d at 444 (claim made by Planned Parenthood that a letter issued by DHS threatened to cut their funding was not ripe for review where there was no certainty that the cut would take place, recognizing that its potential injury was too contingent to be considered a concrete injury); *Robinson*, 353 S.W.3d at 755 (holding that plaintiffs' claim for a declaration that a voter-approved initiative was valid and enforceable was not ripe for review because the record was silent concerning whether the city had failed to comply with the initiative or would soon fail to comply with it).

In the present case, while the funds were allocated, there is no certainty that any expenditures will ever be made, given the multiple contingencies that must be met before the funds may be dispersed, and the possibility that the City might never enter into any social service contracts that would require the dispersal of any funds. The ripeness inquiry is particularly relevant here. Under Zimmerman's Gift Clause claim, the City can defend the expenditure if it: "(1) serves a legitimate public purpose; and (2) affords a clear public benefit received in return." *Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Comp. Comm'n.*, 74 S.W.3d

377, 383 (Tex. 2002). The terms of the contract with the responsible entity as they may dictate the specifics of how the funds would be distributed could well inform those two issues.

Zimmerman is asking us to wade into a policy dispute regarding the legality of the City's proposed expenditures when in fact those expenditures may never be made. And, as the Texas Supreme Court has recognized, avoiding premature litigation of this nature "prevents courts from 'entangling themselves in abstract disagreements over administrative policies' while at the same time serving to 'protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Patterson*, 971 S.W.2d at 442-443, *quoting City of El Paso v. Madero Dev. & Constr. Co.*, 803 S.W.2d 396, 398-99 (Tex.App.--El Paso 1991, writ denied). Accordingly, unless and until the City enters into a contract obligating it to disperse funds to an abortion-assistance organization, Zimmerman's lawsuit in which he challenges the legality of any such disbursement under the Gift Clause, is not ripe for review, as any pronouncement we could make on the legality of the expenditures--which may in fact never be made--would be an advisory opinion, which would not only violate the Constitution, but would be an unpractical and unwise use of our judicial resources.[14]

Zimmerman's Issue Two is overruled.

---

[14] Although the parties did not raise it themselves, we also consider *sua sponte* whether the ripeness challenge would also apply to Zimmerman's first cause of action. We conclude the different nature of the claims dictate that the first claim is ripe for review. When a city allocates a specific amount of money for a program, the zero-sum-game nature of budgeting means that some other program was excluded, or at least, the taxpayers were assessed a tax bill to pay for the program. In that way, an illegal budget item would itself raise a concrete issue, even if years later the money is never spent. But the Gift Clause issue raised in Zimmerman's second issue is implicated by spending of the money for the benefit of a private citizen, which might never happen if a contract is never approved.

## III. CONCLUSION

Having concluded that the trial court lacked subject matter jurisdiction to hear either of Zimmerman's claims, we affirm the trial court's judgment granting the City Defendant's plea to the jurisdiction.

JEFF ALLEY, Justice

March 17, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.