COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| CITY OF FREDERICKSBURG, | § | No. 08-23-00236-CV |
| Appellant, | § | Appeal from the |
| v. | § | 216th Judicial District Court |
| SUSANNA BOYER, | § | of Gillespie County, Texas |
| Appellee. | § | (TC# 17026) |

## **O P I N I O N**

Governmental immunity can shield a Texas city from premises liability claims unless certain predicates are met, including that the city had actual knowledge of the dangerous condition that caused an injury. That predicate is at issue in this appeal. The injury at issue was caused when a tree branch broke off and struck Appellee Susanna Boyer as she walked along South Main Street in the City of Fredericksburg.[1] The City was responsible for maintaining the tree—a Bradford pear—and according to Boyer, the City failed to remove or warn of the offending branch before it fell. The City filed a plea to the jurisdiction, arguing that it is immune from suit under the Texas

---

[1] This case was transferred from the Fourth Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3

Tort Claims Act, which provides a limited waiver of immunity for premises defect cases, because it lacked actual knowledge of the tree's dangerous condition at the time of the incident. The trial court denied its plea. We agree with the City, however, and dismiss the case for want of subject matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 24, 2021, Susanna Boyer was walking on a sidewalk in Fredericksburg, Texas when the branch of a Bradford pear tree fell and struck her in the head, causing serious facial injuries. She sued the City for its negligence in "[f]ailing to maintain a safe public sidewalk"; "[f]ailing to maintain the large, aged Bradford Pear located on the public sidewalk"; "[f]ailing to maintain the public sidewalk free from unreasonable hazards"; "[f]ailing to warn Plaintiff and the public of an unreasonably dangerous condition"; and "[f]ailing to remove, reduce [or] warn of the unreasonable hazard." Boyer also alleged that the City owned and controlled the area where Boyer was injured and that it breached its duty of care by failing to warn or make reasonably safe the dangerous condition of which the City knew and Boyer did not.

The City filed a plea to the jurisdiction, arguing that it was immune from suit under § 101.022 of the Texas Tort Claims Act, which sets out a limited waiver of sovereign immunity. In support of its original plea, the City attached the affidavit of Garret Bonn, Assistant City Manager (and Assistant City Engineer at the time of the incident), who stated that he investigated the incident and found the tree limb was still green, with no indication of potential failure. Bonn swore "as the Assistant City Engineer at the time of the incident in question that the City of Fredericksburg did not have knowledge that the tree limb in question was a danger to the public."

2

In a supplemental plea, the City attached the deposition of Bonn, along with the deposition of David Feller who is identified as the City's "foreman arborist."[2] Bonn testified that he had no previous reports of any branches falling at the place of this accident. He also testified that he was unaware of any prior incidents with any of the Bradford pear trees planted by the City. Both Bonn and Feller acknowledged that the tree involved here was last trimmed by the City in late March 2020, a year before the incident. Feller explained that the City has no set policy or maintenance schedule for the trees, but his crew will trim them if they receive a complaint or notice something themselves. Feller was also unaware of any prior incidents with any of the other Bradford pear trees.

In response to the original plea, Boyer attached the City's answers to interrogatories explaining that following the accident, assistant city supervisor Brandon Vollmar was directed to remove the broken branch, which measured roughly eight to ten feet long. The interrogatory answer claims there "were no previous cut marks on the branch at the point from where it broke due to previous trimming," "[t]he tree at the time of the accident was green and heathy" and the "branch was not dead at the time it fell from the tree." In response to the City's supplemental plea, Boyer offered the affidavit of expert arborist Scott E. George, who stated that the Bradford pear trees are notorious for losing their limbs as they age. Additionally, Boyer stated that the City knew it had planted a Bradford pear tree and that the tree was at least 13 years of age, old for that species of tree. Based on this information, Boyer argued there is a fact issue as to whether the City had actual knowledge of the tree's dangerous condition on the day of the incident.

---

[2] The record does not suggest, however, that Feller is a degreed arborist, nor was he offered as an expert witness.

The trial court denied the City's plea to the jurisdiction. In this appeal, the City raises one issue claiming that there is no evidence it had actual knowledge of the dangerous condition the Bradford pear tree posed on the day of the incident.

## STANDARD OF REVIEW AND APPLICABLE LAW

When it applies, governmental immunity protects political subdivisions of the State, including cities, from suit. *See Wichita Falls State Hospital v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003); *Tabrizi v. City of Austin*, 551 S.W.3d 290, 295–96 (Tex. App.—El Paso 2018, no pet.). Immunity from suit divests a trial court of its subject matter jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). "Although the justifications for its existence have evolved through the years, we have steadfastly retained it in modern times precisely because it shields 'the public from the costs and consequences of improvident actions of their governments[,]' and ensures that the taxes the public pays are used 'for their intended purposes[.]'" *Hillman v. Nueces Cnty.*, 579 S.W.3d 354, 361 (Tex. 2019), (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006) and *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006)). Immunity defeats "a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). But inherent in that principal is Justice Willett's observation that "just as immunity is inherent to sovereignty, unfairness is inherent to immunity." *City of Galveston v. State*, 217 S.W.3d 466, 480 n.38 (Tex. 2007) (Willett, J., dissenting).

Texas Courts have recognized that the legislature "is best suited to make the policy-laden judgments as to if and how state government resources should be expended." *Bacon v. Texas Hist. Comm'n*, 411 S.W.3d 161, 172 (Tex. App.—Austin 2013, no pet.) (citing *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) and *Tooke*, 197 S.W.3d at 331–32). That policy

4

judgment is in the Texas Tort Claims Act that waives sovereign immunity if the governmental unit might be liable as prescribed in the Act. *Miranda*, 133 S.W.3d at 224; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (delineating the areas of governmental liability). Relevant here, the Act waives immunity for personal injuries caused by "a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. For premises defects, a governmental unit owes the same duty to a claimant that a private person owes to a licensee on private property. *Id.* § 101.022(a). Thus, in premises defect cases like this one, the Texas Tort Claims Act permits suits against a governmental unit if it would be liable under a licensee theory of premises liability. *See Miranda*, 133 S.W.3d at 230 (stating plaintiff's claim involving fallen tree branch is a premises defect claim).

Landowners owe licensees a duty not to injure them by willful, wanton, or grossly negligent conduct, and to use ordinary care to warn or make reasonably safe a dangerous condition of which the landowner is aware and the licensee is not. *Sampson v. Univ. of Texas at Austin*, 500 S.W.3d 380, 385 (Tex. 2016). In other words, absent willful, wanton, or grossly negligent conduct, the claimant must prove:

(a)    A condition of the premises created an unreasonable risk of harm to the licensee;

(b)    The owner had actual knowledge of the dangerous condition;

(c)    The licensee did not actually know of the condition;

(d)    The owner failed to exercise ordinary care to protect the licensee from danger; and

(e)    The owner's failure was a proximate cause of injury to the licensee.

*Id.* at 391.

Here, the parties dispute only whether the City had actual knowledge of the dangerous condition the Bradford pear tree posed to licensees. The actual-knowledge element requires a showing that the governmental unit actually knew of the dangerous condition. *Id.* at 392. Constructive or hypothetical knowledge will not suffice. *Id.* Additionally, the claimant must show the landowner actually knew of the "dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition c[ould] develop over time." *Id.* Actual knowledge can be proved by circumstantial evidence, such as by a showing that the landowner received reports of prior injuries or incidents caused by the dangerous condition. *Id.*

A government unit may raise its immunity through a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225–26. "A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When jurisdictional facts are challenged, courts review relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227. In some cases, the jurisdictional evidence implicates the merits. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019). When an evidentiary challenge to jurisdiction is properly supported, the burden shifts to the plaintiff to show a fact issue on the jurisdictional issue.[3] *Id.* If there is no fact issue, the trial court must grant the plea to the jurisdiction. *Sampson*, 500 S.W.3d at 392. If there is a fact issue, the trial court should submit the case to the fact-finder for resolution of the disputed evidence. *Id.* As with a motion for summary judgment, we view the parties' evidence in a light most favorable to the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *Id.* at 384. We review issues of subject matter jurisdiction de novo. *Id.*

---

[3] The court in *Swanson* held that a governmental entity could also raise a jurisdictional challenge through a Rule 166a(i) no evidence motion for summary judgment. *Swanson*, 590 S.W.3d at 552. The City did not raise its jurisdictional challenge through that kind of motion.

## DISCUSSION

The City argues the trial court lacks jurisdiction because there is no evidence the City had actual knowledge of the dangerous condition. It supported that claim through the affidavit of Garret Bonn, current Assistant City Manager and then-Assistant City Engineer on the day of the incident. Its supplemental plea included the deposition of Bonn and City worker, Feller.

Boyer first contends that this evidence is insufficient to *conclusively* establish that the City lacked actual knowledge of a defect in the tree, thus she had no burden to present any evidence in response to the City's plea. The standard for a plea to the jurisdiction "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Miranda*, 133 S.W.3d at 228. So after the governmental entity "asserts and supports with evidence that the trial court lacks subject matter jurisdiction" a plaintiff must show there is a disputed material fact on the jurisdictional issue. *Id*. Our first decision point is then whether the City sufficiently showed the lack of actual knowledge—essentially proving a negative—and creating a burden for Boyer to come forward with her own evidence. In this case, the City offered the affidavit of the Assistant City Manager Bonn, who at the time of the accident, was the Assistant City Engineer. He swore that "the City of Fredericksburg did not have knowledge that the tree limb in question was a danger to the public." Both Bonn and Feller buttress that statement with their observation that they were unaware of any prior incidents involving Bradford pear trees, and Bonn who testified there were no previous incidents at the very location of this tree.[4]

---

[4] Boyer argues in part that the City never designated Assistant City Manager Bonn and foreman arborist Feller as corporate representatives for the city. The Texas Rules of Civil Procedure prohibit a party who "fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner" from offering the "testimony of a witness (other than a named party) who was not timely identified," unless certain exceptions apply. TEX. R. CIV. P. 193.6. As stated, this rule does not apply when the witness is a party to the litigation. Corporations necessarily act through human agents, and when those agents act on behalf of the corporate entity, "that act is the act of the corporation itself." *Arshad v. Am. Express Bank, FSB*, 580 S.W.3d 798, 808 (Tex. App.—Houston [14th Dist.] 2019, no pet.)

"Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Univ. of Texas v. Aguilar*, 251 S.W.3d 511, 513–14 (Tex. 2008) (per curiam) (University supported its claim of no evidence of actual knowledge that a hose across a sidewalk posed unreasonable risk of harm through testimony that there had been no incidents of pedestrians tripping on water hoses for the past five years); *see also Sampson*, 500 S.W.3d at 392 (stating knowledge of prior incidents or reports of the potential danger is circumstantial evidence of actual knowledge of a dangerous condition); *City of Austin v. Credeur*, No. 03-19-00358-CV, 2021 WL 501110, at *6 (Tex. App.—Austin Feb. 11, 2021, no pet.) (mem. op.) (detailing how the City of Austin showed no prior knowledge of an allegedly defective valve cover through the lack of prior claims); *Cnty. of El Paso v. Baker*, 579 S.W.3d 686, 693 (Tex. App.—El Paso 2019, no pet.) (demonstrating lack of notice of defect in elevator through absence of prior claims).

The City also points us to *Miranda*, a premises defect case involving fallen tree branches. There, the Texas Supreme Court found no evidence of actual knowledge of a dangerous condition where a tree branch fell on a visitor to a state park.[5] 133 S.W.3d at 231–32. The state agency supported its plea with testimony from an assistant park manager that "tree limbs are only pruned

(citing *Speedy Stop Food Stores, Ltd. v. Reid Rd. Mun. Util. Dist. No. 2*, 282 S.W.3d 652, 656 n.2 (Tex. App.—Houston [14th Dist.] 2009), aff'd, 337 S.W.3d 846 (Tex. 2011)). Because both Bonn and Feller testified in their capacity as employees of the City—a party to the litigation—it is inconsequential that they were not formally designated as corporate representatives.

[5] *Miranda* precisely decided the question of whether the Texas Department of Parks and Wildlife was subject to suit where the plaintiff had to overcome the recreational use statute. *Miranda*, 133 S.W.3d at 225. Under that statute, the agency would not be liable unless the plaintiff could prove gross negligence with its objective test for an extreme degree of risk and actual subjective awareness of the risk involved. *Id*. So in that way the burden on the *Miranda* plaintiff was higher than that here, where Boyer only needs to show actual knowledge of the dangerous condition. Nonetheless, we find the similarity in proofs on actual knowledge instructive of what the City needed to show to meet its initial burden.

or trimmed if they appear to be dead" and the tree limb there appeared to be living. *Id.* at 231. Here, too, Feller testified that the City's trees are trimmed only if there is a complaint or his crew notices a problem. Bonn's testimony claimed a picture of the limb (not in our record) depicted a live green branch. One of the City's interrogatory answers attached to Boyer's response stated that the broken tree branch was not dead and that the tree was green and healthy. In *Miranda*, the state agency's proofs admitted that other limbs had fallen in the park on about twenty occasions, but no one was injured. *Id.* In this case, the City's witnesses were unaware of any prior issue with the Bradford pear trees injuring anyone. In *Miranda*, the proofs showed the tree limb that injured the plaintiff fell from fifty feet above the campsite and that park employees could not have seen the limb, even if it were dead. *Id.* There is no comparable evidence in our record, other than the tree limb did not appear dead at all. Nor did the City have any scheduled inspection of the trees so that a dead limb, if it existed, would be seen.

We agree, therefore, that the City met its initial burden of showing that it had no actual knowledge of the Bradford pear tree's condition on the day of the incident, and the burden shifted to Boyer to present a fact issue on the City's actual knowledge of a dangerous condition. To meet that burden, Boyer presented the affidavit of her expert arborist, Scott E. George. According to his affidavit, the Bradford pear tree is notorious for its "species-specific failure profile," which refers to the species' known failures of its branches, trunk, or roots. George cited to an excerpt from the Encyclopedia of Trees and Shrubs to explain the tree's defects:

> Despite all of its desirable attributes, however, 'Bradford' suffers from *a fatal genetic flaw that causes it to self-destruct, literally falling apart with time-the many branches will cause the tree to split in half after ten to 15 years.* For short-term use, it may be acceptable, but to plant entire streets with this cultivar is playing biological Russian roulette. [emphasis added]

9

George claimed that a Bradford pear tree has a short lifespan and becomes a known dangerous condition after 10 to 15 years. The tree here was at least 13 years old, according to photos from Google Earth. Consequently, George testified the tree should have been removed as it approached 15 years of age.

But none of Boyer's evidence rises to the level of actual knowledge required to establish a fact issue. That the Bradford pear tree deteriorates over time and is susceptible to losing limbs because of old age is like arguing that dangerous conditions might arise by the passage of time—the same argument courts have rejected many times. *See City of Denton v. Paper*, 376 S.W.3d 762, 767 (Tex. 2012) ("[T]he actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time."); *See City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006) (same); *Baker*, 579 S.W.3d at 693 (same). Thus, while it may be true the Bradford pear tree notoriously loses its limbs over time and is therefore a poor choice for landscape in high-trafficked areas, this fact is not evidence the City had actual knowledge that this tree posed a danger on the day of the incident. Boyer's evidence that the Bradford pear tree is inclined to "split in half after 10 to 15 years" might provide a window during which a dangerous condition might arise, but this only shows the City *should* have known the tree posed a higher risk of injury during this time, not that it *actually* knew the tree was dangerous in July 2021. *See Paper*, 376 S.W.3d at 767 ("Awareness of a potential problem is not actual knowledge of an existing danger.") (quoting *Reyes v. City of Laredo*, 335 S.W.3d 605, 609 (Tex. 2010)).

Additionally, Boyer's contention that the City actually knew of the dangerous condition by knowing the species of tree it planted also fails. No evidence proves the City knew what the

possible risks were of planting this type of tree.[6] Bonn testified he has no specialized knowledge about the Bradford pear tree. And even if the City knew of the species' genetic defects, "[e]vidence that an owner or occupier knew of a safer, feasible alternative design, without more, is not evidence that the owner knew . . . that a condition on its premises created an unreasonable risk of harm." *Sampson*, 500 S.W.3d at 396 (quoting *City of Dallas*, 210 S.W.3d at 604). As such, Boyer failed to raise a fact issue on the City's actual knowledge of the dangerous condition.

Boyer also argues that the City was aware of the tree's dangerous condition because Feller stated that in the absence of a maintenance schedule, the trees are trimmed only when a complaint is made, and in this case, the Bradford pear tree was trimmed in 2020. Thus, Boyer reasons that by way of inference, this tree must have been trimmed because there was a complaint about the tree's dangerous condition. Even so, this is mere speculation, not actual knowledge that the tree was trimmed due to a complaint made of its dangerous condition.[7] Courts have stated that speculative knowledge does not meet the actual-knowledge standard required here. *See Baker*, 579 S.W.3d at 695 ("[A]n inference is not reasonable if premised on mere suspicion—'some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence.'") (quoting *Sampson*, 500 S.W.3d at 395)). Second, the fact that the tree was trimmed in 2020, even if due to its dangerous condition, does not mean the City had actual knowledge of its condition in 2021, a year later when the incident occurred. Knowledge of dangerous conditions at some remote time in the past does not translate into actual knowledge of a dangerous condition existing at the time of the incident. *See Thompson*, 210 S.W.3d at 603 (stating that reports of tripping in the same

---

[6] Bonn testified in his deposition that he was unsure if the City had planted the tree, as Main Street is a state highway and the Texas Department of Transportation may have done the original landscaping.

[7] Instead, David Feller guessed that the tree had been trimmed in 2020 because he or his colleagues had seen the tree's limbs hanging low as they were driving.

11

area plaintiff tripped, which were made three years before the incident, were too remote to impute actual knowledge on the City).[8] Thus, Boyer failed to raise a fact issue on the actual-knowledge element.

Having considered all the evidence in a light favorable to Boyer, we sustain the City's sole issue.

## CONCLUSION

Finding no evidence showing the City had actual knowledge of the tree's dangerous condition, we reverse the trial court's order and dismiss the case for want of jurisdiction.


JEFF ALLEY, Chief Justice

January 9, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

---

[8] Boyer's additional reliance on *Simons v. City of Austin*, 921 S.W.2d 524 (Tex. App.—Austin 1996, writ denied) is misplaced. In that case, the Austin court decided that a city employee had direct evidence acknowledging the dangerousness of an unsupported wooden partition (that fell on the plaintiff) "coupled with that of []two expert witnesses" was more than a scintilla of evidence to show the city's actual knowledge of the dangerous condition. *Id*. at 528. As we explain, what Boyer lacks here is the same kind of direct evidence of City's knowledge of a dangerous limb with this tree at the time of the event.