# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00053-CV

**Michael Rooney and Yvonne Nacu, Appellants**

**v.**

**City of Austin, Kirk Watson, in his Official Capacity as Mayor of the City of Austin; Shay Roalson, in her Official Capacity as Austin Water Director; and Denise Lucas in her Official Capacity as City of Austin Development Department Services Director, Appellees[1]**

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-000519, THE HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Michael Rooney and Yvonne Nacu, appearing pro se, sued the City of Austin ("the City") and Kirk Watson, in his Official Capacity as Mayor of the City of Austin; Shay Roalson, in her Official Capacity as Austin Water Director; and Denise Lucas, in her Official Capacity as City of Austin Development Department Services Director (collectively, "the City Officials") seeking declaratory and injunctive relief related to Rooney's attempts to obtain a certificate of occupancy for a residence located in the Glenlake Subdivision in Travis County. After a bench trial, the

---

[1] Pursuant to Rule 7.2 of the Texas Rules of Appellate Procedure, current City of Austin Mayor Kirk Watson has been automatically substituted for former Mayor Steve Adler and current Austin Water Director Shay Roalson has been automatically substituted for former Director Greg Meszaros.

trial court dismissed Rooney's claims against the City and the City Officials with prejudice. We will affirm.

**BACKGROUND**

Rooney purchased Lot 73 of the Glenlake Subdivision, 3704 Ranch Creek Drive, in 2013 ("the Property") with the intent of building a house on the vacant lot. The Property is platted by a plat that includes Plat Note 4, which states that "no dwelling on this subdivision shall be occupied until connected to a community water system approved by the Texas State Health Department." The plat further provides that this restriction may be modified only with the City's specific approval. The public water system serving Glenlake Subdivision Phase 2 was installed in the early 1980s. A portion of the Property is within 100 feet in horizontal distance of the City's state-licensed public potable water system. A City-owned water tap is located at the Property to benefit the Property and the adjacent lot. In 2015, Rooney contracted to have a well drilled on the Property. The well was initially installed as an irrigation well.

The City of Austin Code of Ordinances incorporates the provisions of the Uniform Plumbing Code (UPC) but also provides some local amendments to the UPC, which are found in Code of Ordinances Section 25-12-153. Relevant here is local amendment 601.1.1, which provides:

> **601.1.1 Water system connection required.** If any part of a lot or tract that contains a house or building is located within 100 feet in horizontal distance (measured based on the closest practicable access route) of a state licensed public potable water system, the water system of the house or building must be separately and independently connected to the public water system. The water system is not required to be connected if:
>
> 1. the property owner received a denial of service in writing from the owner or governing body of the public water system;

2

2. the property owner received a written determination from Austin Water that it is not feasible for the building to be connected to a potable water system; or

3. the property is served by an existing private potable water system and Austin Water determined the private potable water system may continue to be used based on factors such as the type of building served; the age, condition, and capacity of the private potable water system; the quality of the water; and the availability of records related to the system, changes to the system, or the system demand.

Austin, Tex., Code of Ordinances ch. 25-12, art. VI, § 25-12-153 sec. 601.1.1 ("the Connection Requirement"). In January 2017, Rooney sought a waiver from the Connection Requirement, which was denied by Austin Water Assistant Director Kevin Critendon. Rooney appealed the denial to then Austin Water Director Greg Meszaros, who affirmed the denial, noting that the well did not exist when the public water system began providing service and the well was not currently providing any potable water to any home or building on the Property.

In March 2017, Rooney sought to construct a residence on the Property and applied for a building permit from the City. Rooney requested to have the Property served by well water rather than by Austin Water as an alternative means of compliance with the Connection Requirement. City Building Official Carl Wren denied the request. Rooney appealed the denial of that request to the City's Mechanical, Plumbing, and Solar Board, which affirmed the denial. Rooney then appealed the denial to the City Council, which also affirmed the denial. The City never advised Rooney that it was not feasible for the Property to be connected to the existing public potable water system that served the Glenlake Subdivision nor did the City determine that the Property was served by an existing private potable water system the Property could continue to use based on factors such as the type of building served; the age, condition, and capacity of the private potable water system; the quality of the water; and the availability of records related to the system, changes to the system, or the system demand.

3

Rooney proceeded to construct a residence on the Property. When construction was completed in January 2020, Rooney sought to obtain a certificate of occupancy for the residence but was unable to do so because of noncompliance with the Connection Requirement. On January 29, 2020, Rooney sued the City and the City Officials. First, Rooney alleged that the Connection Requirement did not apply to his residence because it was not "a structure served by the City's water utility" as required by Code of Ordinances section 25-1-2(A)(5). *See id.* § 25-1-2(A)(5). Section 25-1-2, titled "Applicability of Regulations," includes a provision that Chapter 25-12 Article 6, which includes the Connection Requirement, applies to "a structure served by the City's water utility." Rooney asserted that, because he had never connected the residence to the City's public potable water system, the residence was not subject to any of the provisions of the Uniform Plumbing Code incorporated into the City's Code of Ordinances or to any of the local amendments, including the Connection Requirement. Thus, Rooney alleged, then Austin Water Director Greg Meszaros had "no jurisdiction and acted beyond his legal authority" and "failed to provide a purely ministerial act" that would allow Rooney to complete construction of his residence.[2] Rooney further alleged that any attempt to apply the Connection Requirement to the Property violated his "contractual, property, and constitutional rights." Rooney also asserted that Meszaros's denial of his request for a waiver of the Connection Requirement was "arbitrary, capricious, and an abuse of his possession of discretionary power." Finally, Rooney asserted that any actions by Austin Water to require him to connect to the public potable water system violated his "personal property and basic contractual rights under Texas State Law."

---

[2] We presume that the "purely ministerial act" referred to is removing a building permit requirement that the residence be connected to the public potable water system so that Rooney could obtain a certificate of occupancy for the residence.

Rooney's petition sought declaratory relief under the Uniform Declaratory Judgments Act; specifically, a declaration of his "legal rights, status, duties, and or privileges under the Austin City Code" and a declaration that Meszaros's denial of his request for a waiver constituted a "Proprietary Function of his office as Director of Austin Water Utility." *See* Tex. Civ. Prac. & Rem. Code §§ 37.001-.011 (UDJA). Rooney also sought injunctive relief ordering the Austin Water Utility to remove the Connection Requirement from his building permit to allow him to complete final inspections and obtain a certificate of occupancy for the residence.

The City and the City Officials filed a plea to the jurisdiction arguing that Rooney's claims were barred by sovereign immunity. The City and the City Officials argued that Rooney failed to establish a waiver of immunity because the UDJA "does not waive immunity against claims seeking a declaration of the claimant's statutory rights or an interpretation of an ordinance" as it relates to that claimant. *See Tabrizi v. City of Austin*, 551 S.W.3d 290, 296-97 (Tex. App.—El Paso 2018, no pet.) (holding that UDJA did not waive immunity for claim asserting that certain City of Austin Code of Ordinances provisions did not apply to claimant's property). After a hearing, the trial court granted the plea to the jurisdiction but gave Rooney an opportunity to replead.

Rooney then filed an amended pleading in which he again sought declaratory and injunctive relief against the City and the City Officials. The factual allegations in the amended petition are consistent with those in the original petition, including the history of unsuccessfully seeking a waiver of the Connection Requirement and the allegation that the City and the City Officials "acted without legal statutory authority in applying" the Uniform Plumbing Code and the Connection Requirement to the Property. Specifically, Rooney alleged, as the basis for his claims against the City and the City Officials, that:

• Austin Water Assistant Director Critendon's denial of Rooney's request for a waiver of the Connection Requirement "was based entirely on his application and interpretation of [the Connection Requirement];"

• the Connection Requirement did not apply to the Property because the Property did not have a "structure served by the City's water utility," which, by virtue of Code of Ordinances section 25-1-2(A)(5), was a prerequisite to application of the Uniform Plumbing Code and the Connection Requirement;

• the City Officials engaged in ultra vires conduct by applying the Uniform Plumbing Code and the Connection Requirement to the residence on the Property; and

• the City and the City Officials collected fees, allowed building permits to be issued, conducted inspections, and "allowed [Rooney] to effectively complete a very expensive construction project and then refused to perform the final inspections," thereby causing financial harm to Rooney.

Based on these allegations, Rooney asserted causes of action for: (1) violating his right to liberty and due course of the law provided by Article 1, section 19 of the Texas Constitution; (2) violating rights secured by the privileges or immunities guarantee in Article 1, section 19 of the Texas Constitution; and (3) violating 42 U.S.C. § 1983 by, under color of an ordinance, depriving him of rights, privileges, and immunities secured by the United States Constitution. Each of these causes of action is based on Rooney's assertion that the City Officials acted ultra vires when they required him to comply with the Connection Requirement, an ordinance that, in his view, did not apply to the residence constructed on the Property. The relief Rooney requested was an injunction directing the City Officials to remove from the building permit the requirement that he comply with the Connection Requirement before he could obtain final inspections and a certificate of occupancy for the residence.

In response to the amended petition, the City and the City Officials again filed a plea to the jurisdiction asserting that Rooney's claims were barred by sovereign immunity and, alternatively, he had not pleaded a valid ultra vires claim against the City Officials. The trial court

6

denied the plea to the jurisdiction and subsequently denied the City and the City Officials' motion for summary judgment on the ground that Rooney's claim that the City and the City Officials erroneously applied the Connection Requirement to the Property, causing violations of his constitutional rights, failed as a matter of law. The case was then tried to the bench. After trial, the court signed an order dismissing Rooney's claims against the City and the City Officials with prejudice and rendering judgment in the City and the City Officials' favor. Rooney then perfected this appeal. In three issues, Rooney asserts that the trial court erred by concluding that: (1) the Uniform Plumbing Code, including the Connection Requirement, applied to the Property; (2) if the Connection Requirement did apply to the Property, the trial court erred in concluding that the City Officials had the authority to deny his request for a waiver; and (3) the Connection Requirement, as applied to the Property, is unconstitutional. The City and the City Officials counter that: (1) Rooney's claims brought under the UDJA are barred by sovereign immunity; (2) Rooney has not pleaded a valid ultra vires claim against the City Officials; and (3) the Connection Requirement does not violate Rooney's constitutional rights.

## DISCUSSION

We first address Rooney's claim, raised in his first issue, that the trial court incorrectly concluded that the Uniform Plumbing Code, including the Connection Requirement, applied to the Property and, therefore, erred in denying his request for a declaration that the Property was not subject to the Connection Requirement. For the following reasons, we conclude that the trial court did not have subject matter jurisdiction over this claim, and it should have been dismissed for want of jurisdiction as requested by the City and the City Officials in their plea to the jurisdiction.

7

When it applies, governmental immunity protects political subdivisions of the State, including cities, from suit. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). A governmental unit's immunity implicates a trial court's subject matter jurisdiction. *Engelman Irrigation Dist. v. Shields Brothers, Inc.*, 514 S.W.3d 746, 751 (Tex. 2017). Governmental immunity generally applies to municipalities when they are performing governmental as opposed to proprietary functions. *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 439 (Tex. 2016); *City of Austin v. Utility Assocs., Inc.*, 517 S.W.3d 300, 307-08 (Tex. App.—Austin 2017, pet. denied). Providing water and sewer service is a governmental function. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(a)(32) (municipality's provision of water and sewer service constitute governmental functions). As it did here, a governmental unit may raise its immunity through a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). As plaintiff, Rooney had the burden to demonstrate that the trial court has subject matter jurisdiction over his claims. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).

Rooney contends that the trial court erred in denying his request for a declaration under the UDJA that the Uniform Plumbing Code, including the Connection Requirement, does not apply to the Property and cannot be enforced with regard to it. The UDJA expressly allows for a "person . . . whose rights, status, or other legal relations are affected by a . . . municipal ordinance . . .[to] have determined any question of construction or validity arising under the . . . ordinance . . . and obtain a declaration of rights, status or other legal relations thereunder." UDJA § 37.004. The UDJA, however, is not a waiver of governmental immunity; it is "merely a procedural device for deciding cases already within a court's jurisdiction." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *see Texas Dep't of Transp. v. Sefzik*,

8

355 S.W.3d 618, 621-22 (Tex. 2011) (per curiam) (observing that Texas Supreme Court has consistently stated that UDJA "does not enlarge the trial court's jurisdiction but is merely a procedural device for deciding cases already within a court's jurisdiction"). The UDJA is not a general waiver of sovereign immunity and only waives immunity for certain claims. *McLane Co. v. Texas Alcoholic Beverage Comm'n*, 514 S.W.3d 871, 875 (Tex. App.—Austin 2017, pet. denied) (citing *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011)). Instead, the UDJA only "waives sovereign immunity in particular cases." *Sefzik*, 355 SW.3d at 622. "For example, the state may be a proper party to a declaratory judgment action that challenges the validity of a statute." *Id.* However, "the UDJA does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law." *Id.* at 621.

Here, Rooney does not seek a declaration concerning the validity of a City ordinance. Instead, he seeks a declaration of his rights under the ordinance; i.e., that it does not apply to the Property. The requested declaration could also be considered as a "bare statutory construction" claim seeking to confirm the scope of the relevant City ordinances. The UDJA does not waive the City's governmental immunity with respect to either such claim. *See id.*; *Tabrizi*, 551 S.W.3d at 297-98 (holding that UDJA did not waive immunity from claim seeking declaration that City's municipal land use regulations did not apply to landowner's subdivision application); *McLane*, 514 S.W.3d at 876 (holding that UDJA did not waive immunity for claim seeking to construe Texas Public Information Act). The trial court did not err in denying Rooney's UDJA claims, which were barred by governmental immunity.

We next consider Rooney's claim that the City Officials acted ultra vires in applying provisions of the City's plumbing ordinance, including the Connection Requirement, to

9

the Property. Sovereign immunity extends to state officials acting in their official capacity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 369-70 (Tex. 2009). An exception to sovereign immunity applies when a party alleges that the government officer acted "without legal authority or failed to perform a purely ministerial act." *Id.* at 372. To fall within this exception to immunity, however, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* If the plaintiff alleges or ultimately can prove only acts within the officer's legal authority and discretion, the claim seeks "to control state action" and is barred by sovereign immunity. *Id.*; *KEM Tex., Ltd. v. Texas Dep't of Transp.*, No. 03-08-00468-CV, 2009 WL 1811102, at *2 (Tex. App.—Austin June 26, 2009, no pet.) (mem. op.). To determine whether Rooney's pleadings allege facts demonstrating that the City Officials acted outside their authority we construe the relevant statutory provisions and evaluate whether the acts alleged are outside the statutory authority granted to the City Officials.

Rooney contends that the trial court erred in determining that the City Officials had the authority to apply the Uniform Plumbing Code, including the Connection Requirement, to the Property. Rooney maintains that, by their own terms, the relevant ordinances do not govern or apply to the Property and, consequently, the City Officials' application of those ordinances was ultra vires. Specifically, Rooney relies on City Code of Ordinances Section 25-1-2, titled "Applicability of Regulations," and its provision that states that Chapter 25-12 Article 6, which includes the Connection Requirement, applies only to "a structure served by the City's water utility." *See* Austin, Tex., City Code of Ordinances ch. 25-12, art. VI, § 25-1-2(A)(5). Rooney reasons that, because the residence constructed on the Property had never been connected to the public potable water system, it was not "a structure served by the City's water utility" and could

10

not be subject to any of the provisions of Chapter 25-12 Article 6, including the Uniform Plumbing Code and the Connection Requirement. Put differently, Rooney asserts that he could not be subject to the Connection Requirement because he was not connected to the City's public potable water system. The linchpin of Rooney's argument is that only a structure that is actually connected to the public potable water system can constitute "a structure served by the City's water utility." Otherwise, according to Rooney, the structure is not "served" by the City's water utility and is not subject to the regulations in the City Code of Ordinances related to plumbing, including the Connection Requirement and other provisions of the Uniform Plumbing Code. This argument requires that we construe section 25-1-2(A)(5), specifically the meaning of the phrase "served by the City's water utility."

We apply rules of statutory construction to construe municipal ordinances. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 164 (Tex. 2016). Statutory construction is a question of law that we review de novo. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008). Our primary objective in construing statutes is to give effect to the legislature's intent. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). The plain meaning of the text is the best expression of legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or unless the plain meaning would lead to absurd or nonsensical results that the legislature could not have intended. *City of Rockwell v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008). We look to the entire act in determining the legislature's intent with respect to a specific provision. *Taylor v. Firemen's & Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 190 (Tex. 1981); *Northwest Austin Mun. Util. Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 828 (Tex. App.—Austin 2008, pet. denied). "Texas courts favor the 'textually permissible interpretation that furthers rather than obstructs the

11

document's purpose.'" *In re Dallas County*, __S.W.3d__, No. 24-0426, 2024 WL 3908122, at \*12 (Tex. Aug. 23, 2024) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012)). "If the 'language is susceptible of two constructions, one of which will carry out and the other defeat [its] manifest object,' courts should apply 'the former construction.'" *Id.*

Here, the purpose of the Connection Requirement is to ensure that structures on property that is "located within 100 feet in horizontal distance (measured based on the closest practicable access route) of a state licensed public potable water system" are "separately and independently connected to the public water system." Reading "served by the City's water utility" to mean "connected to" the public potable water system would violate the above-stated principles of statutory construction by exempting from the Connection Requirement any structure not already connected to the public water system and thereby defeating the ordinance's "manifest object" of requiring structures within 100 feet of a public potable water system to connect to it. In essence, no future building would ever have to comply with the Connection Requirement or any other provisions of the Uniform Plumbing Code. Instead, the better construction of the phrase "served by" is that the potable water system is available for connection to the structure for the provision of water service to the structure. By requiring connection only if a water system is located within 100 horizontal feet of any part of a lot or tract, the City's ordinance further refines the term "a structure served by" to include only structures located on property reasonably proximate to a public water system. This construction is consistent with the City Code of Ordinances' definition of a "service connection," which for water service is "the City-owned pipes connecting the City's

12

distribution facilities to a property owner's cut-off valve." *See* Austin, Tex., City Code of Ordinances ch. 15-9, art. 1 § 15-9-1(14)(b) (defining "service connection").[3]

Applying this construction of "a structure served by the City's water utility," it is plain that the residence Rooney constructed on the Property falls within the scope of City Code of Ordinances Chapter 25-12 Article 6, which includes the Connection Requirement. We therefore conclude that the City Officials did not act ultra vires in requiring Rooney to comply with the Connection Requirement. We overrule Rooney's first issue.

In his second issue, Rooney asserts that the trial court erred by not granting his request for declaratory relief on the ground that the City Officials improperly denied him an exemption to the Connection Requirement. As previously stated, the City Officials are immune from this UDJA claim unless Rooney demonstrates that the City Officials acted without legal authority or failed to perform a purely ministerial act. *See Heinrich*, 284 S.W.3d at 372. If Rooney complains only about the City Officials' exercise of discretion, his UDJA claim does not fall within the exception to governmental immunity. *Id.* We have already determined that the City Officials' application of the relevant ordinance to the Property was not ultra vires. We next consider whether their decision to deny Rooney an exemption from the Connection Requirement was an ultra vires act. To answer this question, we need look no further than the text of section 601.1.1, which allows for an exemption to the Connection Requirement if City Officials "determine" that a private potable water system may continue to be used. The text of the ordinance plainly provides that the City Officials have discretion to grant an exemption based on the determination of whether a private potable water system may continue to be used. An ultra vires claim may not complain of

---

[3] We note that in his pleadings Rooney alleges that "the water service tap [the Property shares with its adjacent lot] constitutes a 'a service connection' to the City's water system."

a government official's exercise of discretion. *Id.* And to the extent Rooney asserts that the City Officials acted ultra vires by failing to base their determination on the factors listed in section 601.1.1 (the type of building served; the age, condition, and capacity of the private potable water system; the quality of the water; and the availability of records related to the system, changes to the system, or the system demand) we note that the statute does not require that the City Officials consider only those factors, but rather directs them to consider factors "such as" those listed. The City Officials' discretion is not so limited as to render the determination to deny Rooney an exception to the Connection Requirement ultra vires. We overrule Rooney's second issue.

We next consider Rooney's as-applied challenge to the constitutionality of the city ordinances requiring that he connect to the City's water utility. The Texas Constitution guarantees that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19.[4] Legislative enactments are presumed constitutional, and a party asserting they are not bears a high burden of demonstrating otherwise. *Patel v. Texas Dep't of Licensing & Regul.*, 469 S.W.3d 69, 87 (Tex. 2015). The proponent of an as-applied challenge under section 19's substantive due course of law requirement must demonstrate that either (1) the statute's purpose could not arguably be rationally related to a legitimate governmental interest; or (2) when considered as a whole, the statute's actual, real-world effect as applied to the challenging party could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest. *Id.* On appeal, Rooney states, with no supporting authority, that the

---

[4] Rooney acknowledges that the protections afforded by the Texas Constitution's Due Course of Law Clause and the United States Constitution's Due Process Clause "are generally the same." *See Lindquist v. City of Pasadena*, 669 F.3d 225, 238 (5th Cir. 2012). Consequently, we do not address the alleged Due Process Clause violations independently.

ordinance is unconstitutional because it has no rational relation to a legitimate governmental interest. At trial, however, Critendon testified that the water-connection requirement helps ensure public health and safety and that one of a public utility's obligations is to ensure that potable water is safely delivered to all customers in its service area. He further testified that requiring properties to connect to the City's public water system helps to ensure that every property in the City has access to clean, safe water that meets all state and federal safety regulations. Critendon stated that building a community water system requires a significant investment of public dollars, and it is "done on the assumption that people will connect to the system." Critendon stated that public policy supports ensuring that a community investment is protected and returned, and that if residents of a neighborhood with a fully developed public water infrastructure could opt out and avoid paying associated fees, the burden of paying for the comprehensive system would fall on the remaining customers and taxpayers.

"[G]overnment action comports with substantive due process if the action is rationally related to a legitimate governmental interest." *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996). Critendon's testimony provides evidence of that legitimate governmental interest; one that has been accepted by other courts in other contexts. *See, e.g.*, *Stern v. Halligan*, 158 F.3d 729, 732 (3d Cir. 1998) (upholding mandatory water hookup ordinance as applied to plaintiffs against substantive due process challenge, stating that "regulating the water supply is a basic and legitimate governmental function"). Rooney has failed to demonstrate that the Connection Requirement's purpose could not arguably be rationally related to a legitimate governmental interest.

Nor has Rooney demonstrated that application of the Connection Requirement to him has a real-world effect that is so burdensome as to be oppressive in light of the government

15

interest in providing and maintaining a safe, reliable source of water to the City's residents. Rooney points only to a requirement that he become an Austin City Water customer despite his desire not to. Rooney does not explain how this consequence of complying with the Connection Requirement is so burdensome as to be oppressive in light of the government's rational interest in regulating the public water supply. Rooney has not demonstrated that the Connection Requirement violates his substantive due process rights under either the Texas or United States Constitutions. We therefore overrule his third issue.

## CONCLUSION

Having overruled each of Rooney's three issues on appeal, we affirm the trial court's judgment.

_____
Chari L. Kelly, Justice

Before Justices Baker, Kelly, and Smith

Affirmed

Filed: September 26, 2024